**KELLY RYAN COOK, P.A., Appellant,**

v.

**David A. SPEARS and Anita Kay Spears, Appellees.**

No. 05–08–00374–CV.

Court of Appeals of Texas, Dallas.

Dec. 19, 2008.

Brent R. Walker, Brandon Kulwicki, Stewart Stimmel LLP, Dallas, TX, for Appellant.

David R. Ragsdale, Law Offices of Street & Ragsdale, Dallas, TX, for Appellee.

Before Chief Justice THOMAS and Justices WRIGHT and MAZZANT.

## OPINION

Opinion by Chief Justice THOMAS.

This is a health care liability case governed by chapter 74 of the Texas Civil Practice and Remedies Code. Kelly Ryan Cook, P.A. filed this interlocutory appeal to challenge the trial court's order denying his second motion to dismiss based on appellees' alleged failure to serve a sufficient expert report. We affirm.

### BACKGROUND

We draw this statement of facts from the allegations contained in the live pleadings filed by appellees, David A. Spears and his wife, Anita Kay Spears, and statements found in their experts' amended reports. Appellant is a physician assistant. On June 8, 2005, David Spears was scheduled for arthroscopic surgery on his right knee. The surgeon, assisted by appellant, erroneously performed the surgery on Spears's left knee. Following surgery,

Spears was removed from the operating room to recover from the anesthesia. When the surgical team realized the surgery had been performed on the wrong knee, they immediately returned Spears to the operating room and performed a second arthroscopic surgery, this time on the correct knee, without obtaining Spears's informed consent.

Appellees sued appellant, the surgeon, the anesthesiologist, and others for medical malpractice. They alleged the defendants were negligent in performing a surgical procedure on the wrong knee, performing a surgical procedure without obtaining Spears's consent, placing Spears under general anesthesia twice in the same day without obtaining his consent, failing to follow accepted medical protocols to prevent wrong-site surgery, and failing to obtain Spears's informed consent for the second surgery. They seek damages for severe physical pain, mental anguish, physical impairment, loss of earning capacity, loss of consortium, and loss of household services proximately caused by the defendants' alleged negligence.

Appellees timely filed expert reports pursuant to section 74.351(a) of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a) (Vernon Supp.2008). The defendants each objected to the expert reports and filed motions to dismiss. After a hearing, the trial court took the matters under advisement. The court later informed the parties that he would sustain the defendants' objections and grant their motions to dismiss. The court asked the parties to submit proposed orders. The trial judge then signed conflicting orders: he signed orders granting the defendants' motions to

dismiss and dismissing appellees' claims with prejudice; he also signed an order sustaining the defendants' objections to the reports, but granting appellees a thirty-day extension in which to cure deficiencies in the expert reports. The defendants, including appellant, filed motions for clarification and reconsideration. In the meantime, appellees timely served amended expert reports. Two days after appellees filed the amended reports, the trial court set aside the orders granting the defendants' motions to dismiss "for the purpose of allowing Plaintiffs an extension of time to cure deficiencies in their expert reports pursuant to the provisions of Tex. Civ. Prac. & Rem.Code § 74.351(c)." *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(c) (Vernon Supp.2008). Appellant objected to the amended reports and filed a second motion to dismiss.[1] The trial court overruled appellant's objections and denied his second motion to dismiss. Appellant argues the trial court erred by denying his second motion to dismiss for two reasons: the court erroneously considered the amended expert reports and the amended expert reports do not meet the requirements of chapter 74.

## STANDARD OF REVIEW

We review a trial court's decision on a motion to dismiss a health care liability claim under the expert report provisions of chapter 74 for an abuse of discretion. *See Jernigan v. Langley,* 195 S.W.3d 91, 93 (Tex.2006) (per curiam) (discussing former article 4590i); *Am. Transitional Care Ctrs. of Tex. v. Palacios,* 46 S.W.3d 873, 875 (Tex.2001) (same). A trial court abuses its discretion if it acts arbitrarily, unreasonably, or without reference to any guiding rules or principles. *Simonson v.*

---

1. The record does not indicate whether the other defendants objected to the amended reports and filed second motions to dismiss.

*Keppard,* 225 S.W.3d 868, 871 (Tex.App.-Dallas 2007, no pet.).

<h2 style="text-align:center">ANALYSIS</h2>

In his first issue, appellant contends the trial court erred by considering appellees' amended expert reports in determining whether to grant or deny his second motion to dismiss. He specifically argues the trial court should not have considered the amended reports because an extension to cure deficiencies in the original reports was not authorized by chapter 74 and, therefore, the amended reports were not timely served, and because appellees did not request an extension. In his second issue, appellant argues the trial court abused its discretion by denying his second motion to dismiss because the amended reports show the experts are not qualified to render an opinion with regard to appellant's conduct, and because their opinions regarding appellant's breach of the standard of care are conclusory.

When a party files a health care liability claim, he must file an expert report within 120 days of filing the petition. TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a). The expert report must provide a fair summary of the expert's opinion regarding the applicable standard of care, breach of that standard, and causation. TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(r)(6) (Vernon Supp.2008). A trial court must grant a motion challenging the adequacy of an expert report if it appears to the court, after a hearing, that the report does not represent an objective good faith effort to comply with the definition of an expert report in section 74.351(r)(6). TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(*l*) (Vernon Supp. 2008). However, a trial court has discretion under section 74.351(c) to grant one thirty-day extension to cure deficiencies in a timely served expert report. TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(c); *Lewis*

*v. Funderburk,* 253 S.W.3d 204, 207 (Tex. 2008); *Ogletree v. Matthews,* 262 S.W.3d 316, 320 (Tex.2007).

In a subpart of his first issue, appellant contends the trial court had no discretion to grant an extension under section 74.351(c) because the expert reports were so deficient that they were the equivalent of having served no report at all. He urges us to adopt the reasoning of the concurrence in *Ogletree v. Matthews.*

In *Ogletree v. Matthews,* Dr. Ogletree, a urologist, asserted the expert, a radiologist, was not qualified to opine on a urologist's standard of care. *Ogletree,* 262 S.W.3d at 318. The trial court found the expert's report was deficient, denied Dr. Ogletree's motion to dismiss, and granted the plaintiffs a thirty-day extension to cure deficiencies. *Id.* Dr. Ogletree filed an interlocutory appeal. *Id.* The court of appeals held it lacked jurisdiction over Dr. Ogletree's appeal because the trial court's denial of the motion to dismiss was coupled with its grant of an extension to cure the deficient report. *Id.* On petition for review, Dr. Ogletree contended the trial court had no discretion to grant an extension because the radiologist was not qualified to opine on a urologist's standard of care, and, as a result, the plaintiffs did not serve an expert report that met the statutory definition of an expert report. *Id.* at 319. The Texas Supreme Court disagreed. It noted the legislature explicitly amended section 74.351(c) to give courts the discretion to grant an extension to cure timely served, but deficient, reports. *Id.* at 320 ("Indeed, the Legislature recognized that not all initial timely served reports would satisfy each of the statutory criteria."). The court also noted the legislature distinguished cases in which a report is timely served but deficient, from cases in which no expert report is served at all, that is, an absent report, because the legislature did

not authorize an extension for absent reports. *Id.* at 320–21; *see* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(b). In noting this distinction, the court did not recognize a difference between reports that were timely served but deficient, and reports that were timely served but so deficient as to constitute no report. *See Ogletree*, 262 S.W.3d at 319–21.

Appellant asks us to make that distinction and adopt a "third category" of reports as urged by Justice Willett in his concurrence in *Ogletree:*

> Nevertheless, in discussing the statutory framework, the Court limits the universe of possible reports to two (and only two) types: absent reports, which have not been filed at all and require dismissal of the case, and deficient reports, which have been timely filed and may receive an extension. In my view, there exists a third, albeit rare, category: a document so utterly lacking that, no matter how charitably viewed, it simply cannot be deemed an "expert report" at all, even a deficient one. A document like this merits dismissal just like an absent report.

*Id.* at 323 (Willett, J., concurring); *see also Funderburk*, 253 S.W.3d at 209–12 (Willett, J., concurring) (discussing "third category" of reports). Justice Willett further explained this "third category" of reports is

> a situation where elements of the report have not been found at all—where the plaintiff submits nothing but doctor- or provider-signed material that contains zero (or practically zero) discussion of what makes a report a report. Elements must be present to be labeled deficient; if they are nonexistent, so is the report.

*Ogletree*, 262 S.W.3d at 323 (Willett, J., concurring).

Several of our sister courts have held that *Ogletree* laid to rest any attempt at such a distinction. *See, e.g., In re Nexion Health at Oak Manor, Inc.*, 243 S.W.3d 848, 851–52 (Tex.App.-Tyler 2008, orig. proceeding) (op. on reh'g) (citing *Ogletree* and rejecting health care provider's argument extension not authorized because "report was not merely 'deficient' but was no report at all"); *McKeever v. Cerny*, 266 S.W.3d 451, 455 (Tex.App.-Corpus Christi 2008, orig. proceeding) (citing *Ogletree* and rejecting health care providers' arguments interlocutory appeal was authorized because expert report so deficient as to constitute no report and trial court obligated to dismiss without granting extension); *Tenet Hosps., Ltd. v. Gomez*, No. 08–07–00003–CV, 2008 WL 199733, at *2–3 (Tex. App.-El Paso Jan.24, 2008, no pet.) (same). *See also Bogar v. Esparza*, 257 S.W.3d 354, 361 (Tex.App.-Austin 2008, no pet.) (stating supreme court "laid to rest" for purpose of interlocutory appeal distinction between timely served but deficient expert report and timely served expert report that is effectively no report).

We decline appellant's invitation to create a "third category" of reports. But even if we were so inclined, the expert reports in this case do not fit the category of being so deficient they are no report at all.

Appellees timely served the original expert reports and curricula vitae of Hervey S. Sicherman, M.D. and Gurvinder S. Uppal, M.D., both orthopedic surgeons. Drs. Sicherman and Uppal stated their qualifications and rendered opinions about the standard of care, breach, and causation. The reports referred to appellant by name and implicated his conduct as a member of the "surgical team." Although we agree those reports were not sufficient to meet the requirements of section 74.351(r)(6) with regard to appellant, the required ele-

ments, while deficient, were not totally absent from the reports such that appellees could not cure the deficiencies if granted an extension. *See Ogletree,* 262 S.W.3d at 323–24 (Willett, J., concurring).

■ Additionally, appellant complains the trial court erred by considering the amended expert reports because appellees did not request an extension. Citing *Mallat v. Reeves,* 238 S.W.3d 874, 881 (Tex. App.-Dallas 2007, no pet.), appellant contends we have required a plaintiff to request an extension before the trial court is authorized to exercise its discretion to grant an extension under section 74.351(c). The Texas Supreme Court recently held a court has discretion to grant *sua sponte* one thirty-day extension. *See Leland v. Brandal,* 257 S.W.3d 204, 207–08 (Tex. 2008) ("If the court agrees that the challenged report is deficient, the court has the discretion *on its own* to grant one thirty-day extension to allow the plaintiff an opportunity to cure the deficiency." (emphasis added)). As a result, appellees were not required to request an extension in order to confer discretion on the trial court to grant an extension under section 74.351(c). *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(c); *Brandal,* 257 S.W.3d at 207–08.

We conclude the trial court had discretion under section 74.351(c) to grant appellees an extension to cure deficiencies in their expert reports. Because the amended expert reports were timely served, the trial court did not abuse its discretion by considering them in determining whether to grant or deny the second motion to dismiss.

We resolve appellant's first issue against him.

■ In a subpart of his second issue, appellant argues appellees' experts are not qualified to render an opinion with regard to appellant's conduct.

To be qualified as an expert, section 74.401 requires that a physician

(1) is practicing medicine at the time such testimony is given or was practicing medicine at the time the claim arose;

(2) has knowledge of accepted standards of medical care for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim; and

(3) is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of medical care.

TEX. CIV. PRAC. & REM.CODE ANN. § 74.401(a) (Vernon 2005). In determining whether an expert is qualified on the basis of training or experience,

the court shall consider whether, at the time the claim arose or at the time the testimony is given, the witness: (1) is board certified or has other substantial training or experience in an area of medical practice relevant to the claim; and (2) is actively practicing medicine in rendering medical care services relevant to the claim.

*Id.* § 74.401(c) (Vernon 2005).

Appellant argues Drs. Sicherman and Uppal are not qualified to render an opinion on the standard of care applicable to appellant because they did not state they are familiar with the standards of care applicable to a physician assistant practicing in Texas. He contends the standards of care in Texas differ from the standards of care in California and New Jersey, where the experts practice. He further contends the outcome of this issue is governed by *Simonson v. Keppard.* We disagree.

In *Simonson,* we concluded the expert in that case, a neurosurgeon, was not qualified to render an opinion concerning the

conduct of a nurse practitioner because the expert did not state he had knowledge of the standard of care for a nurse practitioner or that he had ever worked with or supervised nurse practitioners. *Simonson*, 225 S.W.3d at 872–73. We noted the administrative code establishes "core standards" for a nurse practitioner. *Id.* However, we did not require the expert to state he was familiar with those core standards contained in the code. *See id.* We merely pointed out that nurse practitioners are governed by standards different from those applicable to a physician and, therefore, the expert was required to show "familiarity with the protocols" for a nurse practitioner, not just a familiarity with the standard of care for a physician. *Id.* at 873.

Chapter 204 of the Texas Occupations Code establishes similar "core standards" for physician assistants. *See* TEX. OCC. CODE ANN. §§ 204.001–.352 (Vernon 2004 & Supp.2008). Section 204.202 establishes the scope of practice for a physician assistant and provides a physician assistant's conduct is "delineated by protocols, practice guidelines, or practice directives established by the supervising physician." *See id.* § 204.202 (Vernon 2004).[2] California and New Jersey have similar statutes governing the scope of practice of a physician assistant, but, like the Texas statute, those statutes do not establish standards of care. *See* CAL. BUS. & PROF.CODE § 3502 (Deering 2007); CAL.CODE REGS. tit. 16, §§ 1399.500–.545 (2008); N.J. STAT. ANN. §§ 45:9–27.15–.18 (West 2007).

Unlike the expert in *Simonson*, the experts in this case demonstrated familiarity with the standards of care applicable to a physician assistant assisting in surgery. Dr. Sicherman's report states he is an orthopedic surgeon licensed to practice medicine in New Jersey, California, and New York, and is board certified by the American Board of Orthopaedic Surgery. His report states:

> I am familiar with the proper diagnosis and treatment of patients that require arthroscopic knee surgery. In my current medical practice, I average 80 to 100 arthroscopic surgeries per year. I am familiar with the standards of care anywhere in the United States for arthroscopic knee surgery, and the practices, procedures and protocols on the part of a physician, a physician assistant acting as a surgical assistant, anesthesiologist, and a hospital/surgical center. There is no difference in the applicable standards of care for Frisco, Texas, as opposed to the same practices in other areas of Texas, New Jersey, California, or anywhere else in the United States ... I am very familiar with the standard of medical care for physicians, physician assistants acting as a surgical assistant

---

2. Section 204.202 provides:

(a) The practice of a physician assistant includes providing medical services delegated by a supervising physician that are within the education, training, and experience of the physician assistant.

(b) Medical services provided by a physician assistant may include:

...

(6) assisting at surgery;

...

(c) The activities listed by Subsection (b) may be performed in any place authorized by a supervising physician, including a clinic, hospital, ambulatory surgical center, patient home, nursing home, or other institutional setting.

...

(e) A physician assistant is the agent of the physician assistant's supervising physician for any medical services that are delegated by that physician and that:

(1) are within the physician assistant's scope of practice; and

(2) are delineated by protocols, practice guidelines, or practice directives established by the supervising physician.

TEX. OCC.CODE ANN. § 204.202 (Vernon 2004).

... concerning the diagnosis, treatment, and arthroscopic knee surgery of patients, just like David A. Spears. For over 30 years I have likewise interacted with and worked with many physician assistants acting as surgical assistants, like Kelly Ryan Cook, who assisted in the arthroscopic surgery performed on Mr. David A. Spears. I am very familiar with the standard physician assistant/surgical assistant practices during arthroscopic surgery. I am very familiar with the responsibilities and requirements of a physician assistant, acting as a surgical assistant, when dealing with a patient like Mr. David A. Spears. I have supervised many surgical assistants during arthroscopic surgeries and I have acted as a surgical assistant on many occasions. Accordingly, I am very familiar with the standard physician assistant/surgical assistant practices during arthroscopic surgery.

Similarly, Dr. Uppal's report states he is an orthopedic surgeon licensed to practice medicine in California, is board certified by the American Board of Orthopaedic Surgery, and is the medical director for an ambulatory surgery center. Dr. Uppal states:

I am familiar with the proper diagnosis and treatment of patients that require arthroscopic knee surgery. In my current medical practice, I perform orthopedic surgeries including arthroscopic surgeries. I am familiar with the standards of care anywhere in the United States for arthroscopic knee surgery, and the practices, procedures and protocols on the part of a physician, a physician assistant acting as a surgical assistant, anesthesiologist, and a hospital/surgical center. There is no difference in the applicable standards of care for Frisco, Texas, as opposed to the same practices in other areas of Texas, California, or anywhere else in the United States ... Based upon my education, training, and experience, ... I am very familiar with the standard of medical care for physicians, physician assistants acting as a surgical assistant, concerning the diagnosis, treatment, and arthroscopic knee surgery of patients, just like David A. Spears. For most of my medical career I have interacted with and worked with physician assistants acting as surgical assistants, like Kelly Ryan Cook, who assisted in the arthroscopic surgery performed on Mr. David A. Spears. I am very familiar with the standard physician assistant/surgical assistant practices during arthroscopic surgery. I am very familiar with the responsibilities and requirements of a physician assistant, acting as a surgical assistant, when dealing with a patient like Mr. David A. Spears. I have instructed and supervised many surgical assistants during arthroscopic surgeries and I have acted as a surgical assistant in surgeries performed by other physicians. Accordingly, I am very familiar with the standard physician assistant/surgical assistant practices and standards of care during arthroscopic surgery.

We conclude these reports are sufficient to show the experts have the knowledge, experience, and training that qualifies them to opine about a physician assistant's standard of care when assisting in surgery. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.401(c); *In re Boone*, 223 S.W.3d 398, 403–04 (Tex.App.-Amarillo 2006, orig. proceeding). Accordingly, the trial court did not abuse its discretion by denying appellant's second motion to dismiss on this basis.

■ Next, appellant contends Drs. Sicherman's and Uppal's opinions regarding

appellant's breach of the standard of care are conclusory.[3] He also contends the opinions required the trial court to make a prohibited inference that appellant knew the surgery was being performed on the wrong knee.

■■■■ An expert report must serve two purposes: it must inform the defendant of the specific conduct the plaintiff has called into question, and it must provide a basis for the trial court to conclude the claims have merit. *Brandal*, 257 S.W.3d at 206–07; *Baylor Univ. Med. Ctr. v. Rosa*, 240 S.W.3d 565, 569 (Tex.App.-Dallas 2007, pet. denied). It does not need to marshal all of the plaintiff's proof, as if the claim were being litigated on the merits, and it does not have to meet the same requirements as the evidence offered in a summary judgment proceeding. *Rosa*, 240 S.W.3d at 570. But it cannot merely state the expert's conclusions about the standard of care, breach, and causation—the expert must explain the basis for his statements to link his conclusions to the facts. *Id.*

With regard to breach of the standard of care, Drs. Sicherman's and Uppal's amended reports are substantively identical. We quote Dr. Sicherman, who stated:

> Kelly Ryan Cook was negligent in his performance of his surgical assistant duties concerning two surgeries performed on David A. Spears and failed to meet the standards of care for a physician assistant, acting as a surgical assistant, anywhere in the United States in 2005 by:

> 1. The standard of care required that Kelly Ryan Cook, acting as a surgical assistant, should have known the correct body part and correct site of surgery of Mr. Spears prior to the commencement of the surgery. Instead, Kelly Ryan Cook, did not familiarize himself with the correct surgery site and assisted in a surgery on the wrong site;

> 2. The standard of care required that Kelly Ryan Cook, acting as a surgical assistant, should have been involved in the "time out" procedure, before the start of the surgery, for the purpose of identifying and verifying the correct and intended site of the surgery. If Kelly Ryan Cook, acting as a surgical assistant, realized surgery was about to be performed on the wrong site, Kelly Ryan Cook should have immediately notified the surgeon and the surgical procedure should not have started until all concerns were resolved. Instead, Kelly Ryan Cook failed to note surgery was about to be performed on the wrong site and failed to notify the surgeon, Dr. Barber, that surgery was [sic] to be performed on the wrong site;

> . . . .

> All of the above acts and omissions of Kelly Ryan Cook were negligence and failed to meet even the minimal standard of care for a physician assistant, acting as a surgical assistant, in the United States in 2005.

Appellant argues he "only is in breach of the standard of care if he had information

---

**3.** In his initial appellate brief, appellant challenged only the experts' opinions on breach of the standard of care. In his reply brief, appellant contends appellees did not address his argument about the conclusory nature of the experts' opinions on "breach and causation." Later in the reply brief, appellant argues "the elements were wholly non-existent." And he concludes his reply brief by stating the expert reports "are insufficient on the statutory elements." We limit our analysis to the statutory element raised in appellant's opening brief, breach of the standard of care. *See Dallas County v. Gonzales*, 183 S.W.3d 94, 104 (Tex. App.-Dallas 2006, pet. denied) (reply brief may not be used to raise new issues).

it was the wrong site." And he contends the experts' opinions require the trial court to make an improper inference that appellant knew surgery was about to be performed on the wrong site. He contends if another person negligently documented that Spears was to have surgery on the left knee instead of the right, and appellant relied on that information, there is nothing in the reports to indicate appellant breached the standard of care. Again, we disagree.

The expert reports do not require the trial court to make a prohibited inference that appellant knew surgery was about to be performed on the wrong knee. The experts state the standard of care applicable to appellant required him to verify the surgery was about to be performed on the correct knee. The experts opine it is appellant's failure to acquire that knowledge that constituted a breach of the standard of care. Appellant also contends the reports are conclusory because they do not state what he was required to do to acquire information about the correct surgery site. As we have noted, an expert report is sufficient if it addresses how appellant's conduct has been called into question and provides a sufficient basis for the trial court to conclude appellees' claims against appellant have merit. *See Rosa,* 240 S.W.3d at 572. We conclude the amended reports in this case accomplish these two purposes and represent an objective good faith effort to comply with the definition of an expert report in section 74.351(r)(6). *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6). Accordingly, the trial court did not abuse its discretion by denying appellant's second motion to dismiss on this basis.

We resolve appellant's second issue against him.

CONCLUSION

We affirm the trial court's order denying appellant's second motion to dismiss.