Opinion issued April 25, 2024



In The

# Court of Appeals

For The

## First District of Texas

———————————

### NO. 01-23-00817-CV

———————————

**MICHELLE ELAINE GRATA, M.D., Appellant**

**V.**

**EVA HERNANDEZ, INDIVIDUALLY AND AS NEXT FRIEND OF J.H., A
MINOR CHILD, Appellee**

---

**On Appeal from the 11th District Court**
**Harris County, Texas**
**Trial Court Case No. 2021-47717**

---

## MEMORANDUM OPINION

This is an accelerated interlocutory appeal from the denial of a motion to
dismiss for failure to comply with the expert-report requirements imposed by the
Texas Medical Liability Act. On appeal, Michelle Elaine Grata, M.D., contends that
the trial court had no choice but to grant her motion to dismiss after the plaintiff did

not serve a curative expert report within the 30-day deadline to do so. In the alternative, Grata maintains that the trial court erred in not granting her motion to dismiss because the expert report does not adequately establish causation and because the expert is unqualified to opine on the standard of care or its breach.

We affirm.

## BACKGROUND

Eva Hernandez, individually and on behalf of her infant son, sued Dr. Grata and several other defendants alleging that their negligence during labor and delivery caused her newborn son to suffer a severe, permanent brain injury. Grata is an anesthesiologist who administered an epidural anesthetic during labor. In this appeal, Hernandez's medical malpractice claim against Grata is the only one before us.

As required when a health care liability claim is involved, Hernandez timely served Grata with an expert report made by Robert D. Eden, M.D. In his capacity as a board-certified obstetrician-gynecologist and maternal fetal medicine specialist, Eden opined that Grata breached the accepted standard of care for an anesthesiologist in three ways. First, Grata breached the standard of care by administering an epidural anesthetic to Hernandez when the fetus was in distress. Second, Grata breached the standard of care by initially misplacing the epidural. Third, Grata breached the standard of care by failing to monitor the fetus via fetal

2

scalp electrode after successfully administering the epidural on the second try. Eden opined that each of these breaches is a but-for cause of the infant's brain injury.

Grata timely objected to Eden's report on two grounds and sought dismissal of Hernandez's claim for failure to file an adequate expert report. She contended that Eden's causation opinion is conclusory because it does not identify what she in particular, as opposed to the other defendants, did to cause the brain injury at issue and is not grounded in specific facts. Grata further contended that Eden is not qualified to opine on the accepted standard of care regarding an anesthesiologist.

The trial court held a hearing on Grata's objections. At the conclusion of the hearing, the trial court asked Hernandez's lawyer if he wanted the court to rule or give Hernandez a 30-day extension to file an amended or supplemental report. Hernandez's lawyer eventually replied, "I'll take the 30 days." When asked by a lawyer representing one of the defendants whether the trial court had made "any ruling in terms of what needs to be cured in that 30 days," the court replied, "Nope. 30 days." Consistent with its ruling from the bench, the trial court's corresponding written order granting the 30-day extension to file an amended or supplemental report declared that it had not found the report deficient, stating: "The Court withholds any ruling on the sufficiency of Plaintiff's Chapter 74 Report at this time."

Hernandez eventually served an amended version of Eden's report on Grata. But it is undisputed that she did not serve the new report by the 30-day deadline.

3

The trial court then held a second hearing, during which it did not rule. About two weeks later, the trial court signed an order denying Grata's motion to dismiss. The trial court did not state the rationale for its ruling in its order or otherwise.

Grata appeals.

## DISCUSSION

### I. Was the trial court required to dismiss after Hernandez failed to timely file an expert report curing alleged deficiencies in the original report?

Grata contends that because a trial court may grant an extension to serve an amended or supplemental expert report only if it finds the original one is deficient, an order granting an extension constitutes a finding of deficiency as a matter of law. From there, Grata reasons that if a plaintiff fails to timely serve the amended or supplemental expert report, the trial court must dismiss the lawsuit for failure to timely serve an expert report that satisfies the Texas Medical Liability Act.

#### A. Standard of review

This issue presents a question of statutory interpretation, which we review de novo. *Randol Mill Pharmacy v. Miller*, 465 S.W.3d 612, 615 (Tex. 2015).

#### B. Applicable law

A claimant asserting a health care liability claim is required to serve an expert report on each physician or health care provider against whom she asserts a claim no later than 120 days after they file an answer. TEX. CIV. PRAC. & REM. CODE § 74.351(a). If the claimant does not timely serve a report, the trial court must

4

dismiss her claim on the motion of the physician or health care provider. *Id.* § 74.351(b).

The expert report must provide "a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." *Id.* § 74.351(r)(6). Of course, the report also must be made by someone qualified to opine on these subjects in the case. *See id.* § 74.351(r)(5).

A physician or health care provider may object to the sufficiency of an expert report within 21 days of the date of service or the date after which they file an answer. *Id.* § 74.351(a). If they do not do so by this deadline, any objection is waived. *Id.*

If the trial court finds that an expert report is deficient, "the court may grant one 30-day extension to the claimant in order to cure the deficiency." *Id.* § 74.351(c). The trial court must grant the extension if the deficiency is curable. *See Scoresby v. Santillan*, 346 S.W.3d 546, 549 (Tex. 2011) ("The trial court should err on the side of granting the additional time and must grant it if the deficiencies are curable.").

**C.    Analysis**

Grata is correct that a trial court may grant an extension to amend or supplement an expert report if it finds the original one to be deficient. *See* TEX. CIV. PRAC. & REM. CODE § 74.351(c) ("If an expert report has not been served within the

5

period specified by Subsection (a) because elements of the report are found deficient, the court may grant one 30-day extension to the claimant in order to cure the deficiency."). As our Supreme Court has observed, absent an agreement of the parties to extend the deadline for serving an expert report, a trial court may grant an extension only to allow a claimant to cure a report's deficiencies. *Badiga v. Lopez*, 274 S.W.3d 681, 685 (Tex. 2009); *see also Constancio v. Bray*, 266 S.W.3d 149, 160 (Tex. App.—Austin 2008, no pet.) (explaining that under plain language of statute extension is permissible only when trial court finds report deficient).

Grata is also correct that when a trial court finds an expert report deficient and grants a 30-day extension to serve an amended or supplemental report to cure the deficiency, the trial court must dismiss the claim if the claimant fails to timely serve the amended or supplemental report by this deadline. *See Nexion Health at Beechnut v. Paul*, 335 S.W.3d 716, 718–19 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (holding trial court had no option but to dismiss in suit in which trial court found original expert report deficient and claimant served amended report one day late).

However, it does not follow that a trial court implicitly finds that the original report is deficient whenever it grants an extension. In some instances, the trial court simply may have erroneously granted an extension on an impermissible basis. *See Sanchez v. Martin*, 378 S.W.3d 581, 594–95 (Tex. App.—Dallas 2012, no pet.) (rejecting contention that extension constituted implicit deficiency finding because

6

nothing in record supported this inference and trial court instead stated on record that it thought expert should be afforded additional time to review medical records).

This is the case here: the trial court erroneously granted the extension to amend or supplement the expert report without finding that the report was deficient. Instead of finding that Hernandez's expert report was deficient in some way and granting an extension to cure the deficiency, the trial court reserved its ruling on the supposed deficiencies identified by Grata and gave Hernandez 30 days to cure any possible deficiencies. The trial court explicitly stated this in its order granting the extension, and it likewise indicated that it was not making a deficiency finding at the hearing on Grata's motion challenging the adequacy of Eden's initial report.

Hence, if the issue before us was whether the trial court erred in granting the extension, we would agree. *Badiga*, 274 S.W.3d at 685; *Constancio*, 266 S.W.3d at 160. But that error, and the consequences of that error, are not reviewable in this accelerated interlocutory appeal. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(9) (providing jurisdiction to review interlocutory order denying motion to dismiss for failure to serve expert report required by Texas Medical Liability Act but generally specifying "that an appeal may not be taken from an order granting an extension").

When, as here, a trial court erroneously grants an extension without making the required deficiency finding or on a basis not allowed by statute, this error does not, in and of itself, amount to an implied finding that the expert report is deficient.

In this instance, the trial court affirmatively stated that it was not making a deficiency finding. Therefore, we reject Grata's contention that the trial court had no choice but to dismiss Hernandez's claim when Hernandez failed to timely serve an amended or supplemental expert within the 30-day extension granted by the trial court.

We overrule Grata's first issue.

## II. Did the trial court err in not dismissing because Eden's report does not show Grata's alleged breaches of the standard of care caused the injury?

Grata contends Eden's report is deficient because it does not "provide a fair summary of his opinion on causation." In particular, Grata says the report is too conclusory to establish causation because Eden does not link his causation opinion to facts concerning Grata, as distinct from others involved in the infant's delivery.

### A. Standard of review

We review a trial court's ruling regarding the adequacy of an expert report served on a physician or health care provider under the Texas Medical Liability Act for an abuse of discretion. *Baty v. Futrell*, 543 S.W.3d 689, 693 (Tex. 2018).

### B. Applicable law

A trial court may grant a motion challenging the adequacy of an expert report "only if it appears to the court, after hearing, that the report does not represent an objective good faith effort to comply with the [Act's] definition of an expert report." *Id.* (quoting TEX. CIV. PRAC. & REM. CODE § 74.351(*l*)); *see also* TEX. CIV. PRAC. &

8

REM. CODE § 74.351(r)(6) (defining "expert report" as written report by expert giving fair summary of opinions on standard of care, breach, and causation).

To satisfy this standard, an expert report need not marshal all the claimant's proof. *Baty*, 543 S.W.3d at 693. But the report cannot be conclusory. *Id.* It must discuss the standard of care, breach, and causation with enough specificity to inform the physician or health care provider of the conduct that the claimant calls into question and supply a basis for the trial court to find the claim has merit. *Id.*

With respect to causation in particular, an expert report must identify "how and why" a breach of the standard of care caused the injury, harm, or damages by explaining the basis for the expert's statements and linking his conclusions to specific facts. *E.D. ex rel. B.O. v. Tex. Health Care*, 644 S.W.3d 660, 664 (Tex. 2022) (per curiam). The report need only explain how, as a factual matter, the claimant will prove causation. *Id.* Whether the expert's opinion is credible or believable is not relevant to the question of whether his report is adequate. *Id.*

Talismanic words and phrases are not required. *Baty*, 543 S.W.3d at 693. An expert report does not need to use legal terminology, like "proximate cause," "foreseeability," or "cause in fact." *Columbia Valley Healthcare Sys. v. Zamarripa*, 526 S.W.3d 453, 460 (Tex. 2017). Regardless of the exact language used, however, the report must explain, factually, how the claimant is going to prove the physician or health care provider proximately caused the injuries, harm, or damages. *Id.*

9

In evaluating the adequacy of an expert report, we read the report as a whole. *E.D. ex rel. B.O.*, 644 S.W.3d at 667. The report can be informal. *Am. Transitional Care Ctrs. of Tex. v. Palacios*, 46 S.W.3d 873, 879 (Tex. 2001). The information in the report does not have to satisfy evidentiary requirements that will be applicable on summary judgment or at trial. *Id.*; *see also E.D. ex rel. B.O.*, 644 S.W.3d at 667 (reiterating that adequacy is not evidentiary standard and that expert-report requirement does not require claimant to litigate merits as prerequisite to suit).

## C.    Analysis

At the outset, we note that the parties agree, albeit for different reasons, that our review of the adequacy of Eden's expert report should be confined to his original report. Grata maintains that our review is limited to Eden's original report because Hernandez failed to timely serve an amended or supplemental report by the 30-day extension deadline. Hernandez, in contrast, states that Eden's amended report is substantively the same as the original one as far as Grata is concerned, so that consideration of the amended report would make no difference. As the parties agree that only the original report is relevant, we confine our review of adequacy to it.

In his report, Eden advances several distinct theories of liability. Among other theories, he opines that Grata violated the applicable standard of care by administering an epidural anesthetic under the circumstances. According to Eden, the fetal heart rate had already deteriorated somewhat beforehand, and the

10

administration of the epidural lowered Hernandez's blood pressure and reduced her uterine blood flow. This, in turn, lowered the amount of oxygen available to the fetus, which caused the fetus to suffer a severe, permanent brain injury.

For the proposition that the fetus was in distress before Grata administered the epidural anesthetic, Eden relies on fetal heart rate tracing (a measurement of the heart's rate and rhythm), which he interprets as showing some deterioration in the fetal heart rate. Eden notes that after Hernandez received the epidural anesthetic, she became hypotensive, and her blood pressure remained low for more than an hour after the epidural was discontinued. In his opinion, Grata's administration of the epidural in the face of fetal distress violated the standard of care precisely because use of an epidural anesthetic is associated with hypotension and reduced uterine blood flow, which will worsen any fetal hypoxia. For this reason, an epidural generally must not be administered in this type of situation because it is likely to exacerbate the fetus's distress. This, in Eden's view, is what happened here, as Hernandez experienced low blood pressure and decelerations in the fetal heart rate were observed within 15 minutes of the epidural, and Hernandez's blood pressure continued to be low for a lengthy period of time afterward despite the administration of epinephrine to raise it. As a result, fetal hypoxia occurred before delivery and caused the fetus to suffer a brain injury, as evidenced by neonatal MRI results.

When considered as a whole, Eden's causation opinion is not conclusory. He

explains how and why Grata's administration of an epidural anesthetic breached the standard of care as well as how and why this breach caused the brain injury. In addition, Eden connects his opinions about the standard of care and causation to the facts of the case and thereby demonstrates, as a factual matter, how Hernandez will show that Grata should have foreseen these injuries and how, but for the epidural anesthetic she administered, the fetus would not have sustained them. This fulfills the expert-report requirement as to causation. *See E.D. ex rel. B.O.*, 644 S.W.3d at 664 (stating that expert report must identify "how and why" breach of applicable standard of care caused injury, harm, or damages at issue by explaining basis for expert's statements and linking his conclusions to specific facts); *Abshire v. Christus Health Se. Tex.*, 563 S.W.3d 219, 225–26 (Tex. 2018) (per curiam) (holding that expert report is adequate if it explains how negligence caused injury and need not present evidence as if it is litigating merits, which is for later in litigation).

Accordingly, we hold that the trial court did not err in finding Eden's causation opinion to be adequate under the Texas Medical Liability Act.

Eden also opines that Grata caused the brain injury by violating the standard of care in two additional ways. However, because we have upheld the adequacy of his preceding causation opinion, we need not address the others. *See Miller v. JSC Lake Highlands Operations*, 536 S.W.3d 510, 516 n.7 (Tex. 2017) (per curiam) (stating court need not consider all standards of care articulated in report after

12

concluding others are adequate); *see also* TEX. R. APP. P. 47.1 (requiring opinions to be as brief as practicable while deciding all issues necessary to dispose of appeal).

We overrule Grata's second issue.

## III. Did the trial court err in not dismissing because Hernandez failed to prove her expert, Eden, is qualified to opine on anesthesiology-related matters?

Grata contends that Eden, as an obstetrician-gynecologist and maternal fetal medicine specialist, is unqualified to opine on the standard of care applicable to an anesthesiologist. Grata maintains that Eden's report and curriculum vitae fail to show "that he has received the requisite anesthesiology training necessary to determine when and how to place an epidural anesthetic during a patient's labor."

### A. Standard of review

We review a trial court's ruling regarding whether a person is qualified to opine on the standard of care in an expert report for an abuse of discretion. *See Zamarripa*, 526 S.W.3d at 461 n.37 (concluding trial court "was within its discretion" in deciding nurse was qualified to opine on standard of care in report).

### B. Applicable law

In a suit asserting a health care liability claim against a physician for injury of a patient, a person may qualify as an expert on the standard of care only if he is a physician who is practicing medicine at the time he testifies or was practicing medicine when the claim arose; is knowledgeable about the standards of medical care for the diagnosis, care, or treatment of the illness, injury, or condition at issue;

13

and is qualified by training or experience to offer an expert opinion on those standards. TEX. CIV. PRAC. & REM. CODE § 74.401(a); *see also id.* § 74.351(r)(5)(A) (defining "expert" in context of claims alleging physician breached applicable standard of care as one qualified to testify under section 74.401). A report by an unqualified person does not constitute a good-faith effort to satisfy the expert-report requirement imposed by the Texas Medical Liability Act. *New Med. Horizons v. Milner*, 575 S.W.3d 53, 61 (Tex. App.—Houston [1st Dist.] 2019, no pet.).

A physician is not qualified to testify as an expert on every medical question simply by virtue of being a medical doctor, but the qualification requirement is not intended to be especially narrow in application. *Benge v. Williams*, 548 S.W.3d 466, 472 (Tex. 2018). A physician need not specialize in the particular type of medical practice at issue to qualify as an expert. *Zamarripa*, 526 S.W.3d at 461 n.37; *New Med. Horizons*, 575 S.W.3d at 62. The dispositive inquiry is whether the physician has expertise as to the very subject on which he opines. *New Med. Horizons*, 575 S.W.3d at 62. In general, a physician who practices outside the specialty in question may nonetheless qualify as an expert under two circumstances: if he possesses practical knowledge of what is ordinarily done by physicians under circumstances like those that confronted the physician who is being sued or if the subject matter is common to and equally recognized and developed in all fields of medical practice. *Id.*; *see also Owens v. Handyside*, 478 S.W.3d 172, 185 (Tex. App.—Houston [1st

Dist.] 2015, pet. denied) (indicating that physician need not practice in particular field if he shows he has knowledge, skill, experience, training, or education about specific issue).

## C. Analysis

Unlike Grata, Eden is not an anesthesiologist. Nor does Eden claim in his report that his opinions about the applicable standard of care are premised on knowledge that is common to and equally recognized and developed in all fields of medical practice. Therefore, the question before us is whether Eden's report shows that he has practical knowledge as to whether anesthesiologists would ordinarily refrain from administering an epidural anesthetic under similar circumstances. *See New Med. Horizons*, 575 S.W.3d at 62 (noting that physician who does not specialize in field of medicine at issue may still qualify as an expert if he possesses practical knowledge as to what specialist ordinarily would do under like circumstances).

In his report, Eden represents that he is a board-certified obstetrician-gynecologist and maternal fetal medicine specialist. When Hernandez served Eden's report on Grata in this suit, Eden had held this board certification and been practicing in this specialty for more than three decades. In this role, he has supervised nurses and residents in the delivery setting and has become familiar with the standards of care applicable to them and anesthesiologists relating to the provision of medical services associated with labor and delivery. He also has extensive experience caring

for obstetrical patients and their fetuses in this setting, "including the anesthesia management of obstetrical patients in this context." Indeed, Eden states in his report that he has "cared for hundreds of patients who experienced problems of the fetus during labor and delivery like the ones experienced here." As a result of this experience and having worked alongside anesthesiologists for several decades, Eden is experienced with respect to "determinations of what type of anesthesia is appropriate" under circumstances like those in this case, and he is "familiar with the standards of care applicable to an anesthesiologist" in a labor and delivery setting. In his current position, he usually covers labor and delivery three days each week.

In assessing whether a person qualifies as an expert based on training or experience, we must consider whether at the time of his testimony or when the claim arose he "is board certified or has other substantial training or experience in an area of medical practice relevant to the claim" and "is actively practicing medicine in rendering medical care services relevant to the claim." TEX. CIV. PRAC. & REM. CODE § 74.401(c). On this record, we can only answer these questions in the affirmative. Eden is a board-certified obstetrician, the medical specialty that delivers babies, and has been so for decades, during which time he has treated patients with fetal difficulties like those involved here. He represents that this experience has made him familiar with the administration of anesthesia in situations like this one. In his role as an obstetrician, he has not just worked alongside anesthesiologists but

worked alongside them in the labor and delivery environment in particular. Given that he has practiced medicine in this area for decades and continues to do so, a trial court could reasonably credit his representation that he is familiar with the standard of care applicable to the administration of an epidural anesthetic in this case.

Notably, this is not an instance in which a physician who practices in an altogether different medical field seeks to opine on the minutiae of anesthesiology. Here, the question is more general—whether an epidural is appropriate during labor when the fetus is ostensibly already showing signs of distress—a subject that a medical doctor who has delivered babies for decades would reasonably know about. Based on this experience as an obstetrician, Eden represents that he is in fact familiar with this subject and has cared for patients experiencing comparable fetal distress. This is sufficient to establish that Eden has the necessary experience to opine on the standard of care as to whether the administration of an epidural anesthetic breaches the accepted standard of care in this particular case. *See Hillery v. Kyle*, 371 S.W.3d 482, 486–89 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (affirming trial court's ruling that cardiologist was qualified to opine that surgeon breached standard of care by failing to ensure proper postsurgical anticoagulation based on cardiologist's experience treating patients with similar conditions and overlap between his specialty and specialties of treating physicians); *Cook v. Spears*, 275 S.W.3d 577, 582–84 (Tex. App.—Dallas 2008, no pet.) (affirming trial court's ruling that

17

orthopedic surgeons were qualified to opine on standard of care applicable to physician assistants assisting in surgery based, in part, on surgeons' interaction with physician assistants in context of kind of surgery patient underwent in case).

Therefore, we hold that the trial court did not err in finding Eden qualified to opine on the standard of care as to Grata, and we overrule Grata's third issue.

## CONCLUSION

We affirm the trial court's order denying Grata's motion to dismiss.


Gordon Goodman
Justice

Panel consists of Justices Goodman, Landau, and Hightower.