Warren R. **FAGADAU, M.D., Appellant,**

v.

**Thomas H. WENKSTERN, Appellee.**

No. 05–09–00861–CV.

Court of Appeals of Texas, Dallas.

April 14, 2010.

Brandon Kulwicki, Stewart Stimmel LLP, Dallas, TX, for Appellant.

Thomas H. Wenkstern, Edwards & De La Cerda, L.L.C., Dallas TX, pro se.

Before Justices MORRIS, FRANCIS, and FILLMORE.

## OPINION

Opinion By Justice MORRIS.

This interlocutory appeal follows the trial court's refusal to dismiss Thomas H. Wenkstern's health care liability claims against Warren R. Fagadau, M.D. Dr. Fagadau raises two issues on appeal focusing on the sufficiency of Wenkstern's expert

reports. He contends the trial court erred when it denied his first motion to dismiss, which challenged Wenkstern's initial expert report, and also erred when it granted Wenkstern a thirty-day extension to file an amended report. He further contends the trial court abused its discretion by denying his second motion to dismiss after Wenkstern filed an amended report. Concluding Dr. Fagadau's arguments are without merit, we affirm the trial court's order.

## I.

On August 23, 2006, Wenkstern was examined by Dr. Fagadau, an opthalmologist. At that time, Wenkstern complained of "floaters" and grainy vision in his right eye. Dr. Fagadau diagnosed Wenkstern with a posterior vitreous detachment but noted the retina was not detached. According to Wenkstern, Dr. Fagadau told him the floaters would disappear over time or he would become accustomed to them. Wenkstern also contends that when he asked Dr. Fagadau if he should see a retinologist, Dr. Fagadau responded "no." Dr. Fagadau recommended a follow-up appointment be scheduled within six months to a year and told Wenkstern to call if he experienced any significant change in his vision.

On September 25, Wenkstern called Dr. Fagadau's office because he experienced a surge of floaters. Wenkstern was referred to Dr. Marcus Allen, who diagnosed Wenkstern with a detached retina in his right eye and recommended treatment for Wenkstern's left eye to address areas of weakness. Wenkstern underwent surgery on his right eye on September 29. At the same time, he was given laser treatment for his left eye. Although the left eye responded well to the treatment, the right eye required further surgeries and treatments. According to Wenkstern, his right eye is now significantly impaired, resulting in problems such as double vision and lower visual acuity.

Wenkstern brought this suit against Dr. Fagadau contending he was negligent in (1) failing to examine his left eye, (2) failing to schedule a follow-up appointment in a reasonably prudent manner under the circumstances, and (3) failing to timely refer him to a retinologist. Pursuant to section 74.351 of the Texas Civil Practice and Remedies Code, Wenkstern filed an expert report in support of his claims. The report was prepared by Dr. Daniel Goldman, an opthalmologist specializing in diseases and surgery of the retina. Dr. Goldman opined that Wenkstern "should have been seen at least within the first two weeks after the exam of 8/23/06" and "scheduling the patient for a six-month to one year follow-up was below the standard of care." Dr. Goldman further stated that "[b]ecause [Wenkstern] was not reexamined and treated soon enough, he developed Retinal Detachment requiring several surgeries." Dr. Goldman concluded that "if the tears were noted sooner, they could have been treated with laser and all the subsequent Retinal Detachment surgeries avoided."

Dr. Fagadau objected to the report and moved to dismiss Wenkstern's claims under section 74.351(b) of the civil practice and remedies code. He argued the report was insufficient to satisfy the requirements of section 74.351 because it failed to address all of the acts of negligence asserted in Wenkstern's petition and Dr. Goldman's opinion on causation was wholly conclusory. Following a hearing, the trial court concluded the report was insufficient under section 74.351. The trial court, however, denied the motion to dismiss. It then granted Wenkstern a thirty-day extension to cure the deficiencies in the report pursuant to section 74.351(c).

Within the thirty days, Wenkstern filed an amended report by Dr. Goldman. Dr. Fagadau again objected to the report and moved to dismiss Wenkstern's claims for failure to serve a sufficient expert report under section 74.351. This time, the trial court denied Dr. Fagadau's motion in its entirety. Dr. Fagadau brought this interlocutory appeal pursuant to section 51.014(a)(9) of the civil practice and remedies code.

## II.

In challenging the trial court's decision to deny his first motion to dismiss, Dr. Fagadau contends that Wenkstern's original expert report failed to address two of the three acts of negligence asserted in the pleadings. Specifically, Dr. Fagadau contends the original report did not address Wenkstern's allegations that he was negligent for failing to examine Wenkstern's left eye and failing to refer him to a retinologist. Because these alleged acts of negligence were not discussed in the original report, Dr. Fagadau contends Wenkstern failed to timely serve a report addressing the health care liability claims based on those acts and the trial court was required to grant the motion to dismiss those claims. See TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(b) (Vernon Supp.2009).

All health care liability claims are subject to the expert report requirements found in section 74.351 of the Texas Civil Practice and Remedies Code. See TEX. CIV. PRAC. & REM.CODE ANN. § 74.351 (Vernon Supp.2009). Section 74.351(b) states that, if an expert report has not been served within 120 days after the original petition was filed, the trial court, on motion of the affected health care provider or physician, must dismiss the subject claims with prejudice and award reasonable attorney's fees and costs. See id. § 74.351(b). If, however, an expert report is timely served but

found deficient, section 74.351(c) allows the trial court discretion to grant one thirty-day extension to cure the deficiency. Id. § 74.351(c). No appeal may be taken from a trial court's order granting an extension under section 74.351(c). See id. § 51.014(9).

In *Ogletree v. Matthews,* the Texas Supreme Court held that where an existing expert report has been found deficient, the trial court's decision to deny the motion to dismiss and its decision to grant an extension are inseparable. See *Ogletree v. Matthews,* 262 S.W.3d 316, 321 (Tex.2007). Accordingly, in cases where "a report that implicated [the health care provider's] conduct was served and the trial court granted an extension," appellate courts are without jurisdiction to reach the merits of the motion to dismiss. *Id.*

Two years later, in *Badiga v. Lopez,* the supreme court addressed the issue of whether Texas courts of appeals have jurisdiction to address the merits of a motion to dismiss in cases where no expert report was served within the time permitted but the trial court denied the motion and granted an extension under section 74.351(c). See *Badiga v. Lopez,* 274 S.W.3d 681 (Tex.2009). Under those circumstances, the court concluded a defendant health care provider could pursue an interlocutory appeal of the denial of the motion to dismiss. See *id.* at 685. The court stressed that "a deficient report differs from an absent report," and, in the case of the latter, the trial court has no discretion to grant an extension. *Id.* at 684.

■ Dr. Fagadau contends the original expert report made the subject of his first motion to dismiss fits into the category of reports that falls between those that are merely deficient and those that are physically absent. This "third category" was first recognized in the concurring opinion

in *Ogletree*. *See Ogletree*, 262 S.W.3d at 322–23 (Willett, J., concurring). In his concurrence, Justice Willett urged the court to recognize that some expert reports filed by plaintiffs may be so deficient that they constitute no report at all and should not be treated as an expert report for the purposes of allowing an extension under section 74.351(c). *Id.* at 324. According to Justice Willet, such a report is "so utterly lacking that, no matter how charitably viewed, it simply cannot be deemed an 'expert report' at all, even a deficient one." *Id.* at 323. Dr. Fagadau asks us to adopt Justice Willett's reasoning and conclude that, because the report at issue here failed to address two of the acts of negligence asserted in Wenkstern's pleadings, the report, though technically existing, was "no report" with respect to those allegations. Dr. Fagadau argues that, because the report was effectively absent with respect to those allegations, the trial court had no discretion to grant an extension and was required to grant his first motion to dismiss the claims based on the acts not addressed.

Since *Ogletree*, the supreme court has not directly addressed whether a report may be so deficient that it cannot be considered a report for purposes of denying a motion to dismiss and granting an extension under section 74.351(c). *See In re Watkins*, 279 S.W.3d 633, 636 (Tex.2009) (Willett, J., concurring); *Gardner v. U.S. Imaging, Inc.*, 274 S.W.3d 669, 671 (Tex. 2008). Several of our sister courts of appeals have addressed the issue, however, resulting in a split of authority. *See e.g. Morris v. Umberson*, 312 S.W.3d 763 (Tex. App.-Houston [1st Dist.] 2009, pet. denied) (holding no jurisdiction to address merits of motion to dismiss where appellees timely served report implicating defendant physician and trial court granted extension to cure deficiencies); *Benson v. Vernon*, 303 S.W.3d 755 (Tex.App.-Waco 2009, no

pet.) (report that did not address one of plaintiff's injuries was "no report at all" as to that claim requiring dismissal); *Scoresby v. Santillan*, 287 S.W.3d 319 (Tex.App.-Fort Worth 2009, pet. filed) (holding supreme court precedent limits the universe of possible reports to either deficient or absent).

In *Cook v. Spears*, this Court declined to recognize the third category of reports discussed by Justice Willett in *Ogletree*. *See Cook v. Spears*, 275 S.W.3d 577, 581 (Tex.App.-Dallas 2008, no pet.). Our decision is supported by the supreme court's later holding in *Badiga*. In *Badiga*, the court stated that the purpose of the statutory ban on interlocutory appeals from orders granting extensions to file an expert report was "to allow plaintiffs the opportunity to cure defects in *existing* reports." *See Badiga*, 274 S.W.3d at 684 (emphasis in original). The court noted that if a defendant could appeal the denial of a motion to dismiss when an extension to file a new report has been granted, "the court of appeals would be reviewing the report's sufficiency while its deficiencies were presumably being cured in the trial court." *Id.* This policy consideration applies to all cases in which a report implicating a physician's conduct has been served regardless of the extent of the report's alleged deficiencies. As in *Ogletree*, the supreme court's rationale appears to contemplate that the timely service of any report implicating the subject physician's conduct vests the trial court with discretion to deny a motion to dismiss the claims made against the physician and grant an extension to cure deficiencies under section 74.351(c). In such circumstances, an appellate court lacks jurisdiction to consider the merits of such an order under section 51.014(9). *See Ogletree*, 262 S.W.3d at 321. Given this precedent, and the fact that Wenkstern timely filed an expert re-

port implicating Dr. Fagadau's conduct, we conclude we have no jurisdiction to address the propriety of the trial court's order denying Dr. Fagadau's first motion to dismiss and granting Wenkstern an extension to file an amended expert report.

## III.

Dr. Fagadau next challenges the trial court's denial of his second motion to dismiss. He argues that, although Dr. Goldman's amended report addresses all of the alleged acts of negligence, it does not meet the statutory requirements for an expert report.[1] Therefore, according to Dr. Fagadau, the trial court was required to dismiss Wenkstern's claims against him.

A trial court must dismiss a plaintiff's claims for failure to file a sufficient expert report only if the report does not represent a good-faith effort to comply with the statutory definition of an expert report. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(*l* ); *see also, Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 878 (Tex.2001). The statutory definition requires the expert to provide a "fair summary" of the expert's opinions regarding the applicable standards of care, the manner in which the care rendered failed to meet those standards, and the causal relationship between that failure and the injury, harm, or damages claimed. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(r)(6). The report is meant to

---

1. In the amended report, Dr. Goldman stated the following:

> The patient [Wenkstern] was a high myope, which is a known risk factor for Retinal Detachment. On 8/23/06, the patient presented to Dr. Fagadau with floaters and grainy vision of acute onset in his right eye. As stated above, the record reflects that a vitreous floater was found in the right eye, and that Retinal Detachment could be possible. The patient also had the additional risk factor of Lattice Degeneration in the left eye, which was never noted by Dr. Fagadau because he failed to examine the left eye. Dr. Fagadau's failure to examine the patient's left eye on 8/23/06 was below the standard of care. Within reasonable medical probability, if the patient had been sufficiently examined on 8/23/06, Lattice Degeneration would have been found in the left eye, which would have further indicated the increased probability of Retinal Detachment in the right eye. Furthermore, considering the conditions in the patient's right eye as well as the pigmented cells in the vitreous noted by Dr. Allen, the standard of care required that Dr. Fagadau either (1) personally perform a follow-up examination of the patient, at the very least by 9/6/06 (*i.e.*, within 2 weeks of 8/23/06), or (2) immediately refer the patient to a physician with sufficient expertise to provide care and treatment for the patient, such as a vitreo-retinal surgeon. Dr. Fagadau did neither. Instead, he scheduled the patient for a follow-up of six months to one year, which was below the standard of care.

> According to the records, the patient did not have Retinal Detachment on the exam of 8/23/06 and he did have a Retinal Detachment on the exam of 9/27/06. This means that the Retinal Detachment occurred between these two dates, and it further means that tears developed in the patient's right eye prior to the Retinal Detachment. Within reasonable medical probability, if the patient had been sufficiently examined on 8/23/06 (including an examination of the left eye) and reexamined (whether it be by Dr. Fagadau or another physician) by 9/6/06, the developing tears in the patient's right eye would have been noted sooner and could have been successfully treated with laser before Retinal Detachment ever occurred. Dr. Fagadau failed to do this, causing the patient to develop a Retinal Detachment in his right eye. Further, within reasonable medical probability, this earlier laser treatment to the right eye would have obviated the need for many subsequent surgeries endured by the patient. Lastly, within reasonable medical probability, had the patient received this earlier laser treatment to the right eye, he would not have suffered the injuries to the vision in his right eye that he now suffers.

serve two purposes: (1) to inform the defendant of the specific conduct the claimant is questioning and (2) to provide a basis for the trial court to conclude the claims have merit. *See Leland v. Brandal,* 257 S.W.3d 204, 206–07 (Tex.2008). The report does not need to contain all of the plaintiff's proof. *See Cook,* 275 S.W.3d at 585. Nor does it have to meet the same requirements as evidence submitted in a summary judgment proceeding. *Id.* But it must do more than merely state the expert's conclusions about the standard of care, breach, and causation. The expert must explain the basis of his statements and link his conclusions to the facts. *Id.*

■■■ Dr. Fagadau contends that Dr. Goldman's amended report is insufficient to meet the requirements of section 74.351 because it is factually unsupported and the opinions expressed on the standard of care and causation are conclusory. A "fair summary" of the standard of care is "something less than a full statement of the applicable standard of care and how it was breached." *See Palacios,* 46 S.W.3d at 880. A fair summary need only inform the doctor what care was expected but not given. *Id.* In this case, Dr. Goldman's expert report clearly sets forth what care was expected from Dr. Fagadau and how he failed to provide it. Dr. Goldman opines that a sufficient examination of Wenkstern required an examination of his left eye in addition to his right eye. Dr. Goldman further states that Dr. Fagadau's failure to note the lattice degeneration in Wenkstern's left eye indicates that he failed to examine the left eye during his evaluation on August 23 and this failure fell below the applicable standard of care.

Dr. Goldman also opines that the condition of Wenkstern's right eye, including pigmented cells in the vitreous, indicated potential retinal detachment and required Dr. Fagadau either to refer Wenkstern immediately to a specialist, such as a vitreo-retinal surgeon, or, at the very least, schedule a follow-up appointment to re-examine Wenkstern within two weeks. Instead, Dr. Fagadau told Wenkstern to schedule a follow-up appointment in six months to one year. Dr. Goldman states this action fell below the standard of care. Contrary to Dr. Fagadau's arguments, Dr. Goldman's opinions about the care that should have been rendered by Dr. Fagadau are not conclusory but are tied to specific facts. *See Moore v. Sutherland,* 107 S.W.3d 786, 791 (Tex.App.-Texarkana 2003, pet. denied). The report provides a fair summary of the applicable standard of care and informs Dr. Fagadau of the conduct being called into question. Accordingly, we conclude the trial court did not abuse its discretion in concluding Dr. Goldman's report sufficiently addressed the elements of the standard of care and the alleged breach of that standard. *See Granbury Minor Emergency Clinic v. Thiel,* 296 S.W.3d 261, 270 (Tex.App.-Fort Worth 2009, no pet.).

■■■ An expert report must also provide information linking the defendant's purported breach of the standard of care to the plaintiff's injury. *See id.* at 271. The report need not marshal all the evidence necessary to establish causation at trial. *See Bowie Mem'l Hosp. v. Wright,* 79 S.W.3d 48, 52 (Tex.2002). But it must contain sufficiently specific information to demonstrate causation beyond mere conjecture. *See Farishta v. Tenet Healthsystem Hosps. Dallas, Inc.,* 224 S.W.3d 448, 453 (Tex.App.-Fort Worth 2007, no pet.).

■■■ Dr. Fagadau contends the expert report in this case is conjectural with respect to causation because there is no indication of the exact date Wenkstern's retinal detachment occurred. Absent an exact date, Dr. Fagadau argues there is no way to show that his failure either to refer

Wenkstern immediately to another physician or to schedule a follow-up examination within two weeks caused Wenkstern's injuries. Dr. Fagadau contends it is equally likely that Wenkstern's condition remained unchanged during the two-week period following his initial examination or the retinal detachment occurred during the two-week period and any later re-examination by him or another physician would not have prevented the detachment from occurring.

Although Dr. Goldman's report does not give an exact date the retinal detachment occurred, it clearly opines that a sufficient initial examination and a re-examination within two weeks would have prevented Wenkstern's retinal detachment. Dr. Goldman states that before the retinal detachment occurred, "tears developed in [Wenkstern's] right eye." He goes on to state that, "within reasonable medical probability," if Wenkstern had been sufficiently examined in his initial visit and re-examined either by Dr. Fagadau or another physician within two weeks, the tears in Wenkstern's right eye would have been found in time to be treated successfully with a laser before the retina detached. Finally, Dr. Goldman opines that this earlier laser treatment "would have obviated the need for many subsequent surgeries endured by [Wenkstern]" and "he would not have suffered the injuries to the vision in his right eye that he now suffers." The report, therefore, specifically links Dr. Fagadau's alleged conduct to Wenkstern's injuries and dismisses the possible scenarios suggested by Dr. Fagadau that could refute causation.

■ Although Dr. Fagadau may disagree with Dr. Goldman's conclusion that a re-examination within two weeks would have prevented Wenkstern's retinal detachment, such disagreement does not render Dr. Goldman's opinions on causation conjectural. Furthermore, the fact that

Wenkstern may not prove causation at trial does not make Dr. Goldman's expert report inadequate. The possibility that facts may later be discovered that prove Dr. Goldman's opinions on causation are incorrect is not a basis for holding the report insufficient under section 74.351. *See Methodist Hosp. v. Shepherd–Sherman,* 296 S.W.3d 193 (Tex.App.-Houston [14th Dist.] 2009, no pet.).

■ Dr. Goldman's expert report is also not conclusory. The report describes what Dr. Fagadau should have done and what happened because he failed to do it. *See Moore,* 107 S.W.3d at 791. As such, the report clearly constitutes a good faith effort to provide a fair summary of Dr. Goldman's opinions on causation. Dr. Fagadau complains the report fails to rule out other possible causes of Wenkstern's injuries such as preexisting conditions. But the report clearly states that, within reasonable medical probability, Wenkstern's injuries would not have occurred but for Dr. Fagadau's alleged conduct. The report further states it was Dr. Fagadau's failure to address Wenkstern's preexisting conditions properly that ultimately caused his injuries.

After a thorough examination of the report and the applicable law, we conclude the report sufficiently informs Dr. Fagadau of the specific conduct Wenkstern is questioning and provides a basis for the trial court to determine whether the claims have merit. *See Leland,* 257 S.W.3d at 206–07. Accordingly, the trial court did not err in denying Dr. Fagadau's second motion to dismiss.

We affirm the trial court's order.