

# NUMBER 13-13-00238-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

TRISUN HEALTHCARE, LLC AND
TRISUN CARE CENTER RIVER RIDGE,                          Appellant,

v.

MINERVA LOPEZ, INDIVIDUALLY AS
WRONGFUL DEATH BENEFICIARY OF
HUMBERTO LOPEZ, DECEASED, ON BEHALF
OF THE ESTATE OF HUMBERTO LOPEZ,
DECEASED, AND ON BEHALF OF ALL
WRONGFUL DEATH BENEFICIARIES
OF HUMBERTO LOPEZ, DECEASED,                             Appellee.

---

On appeal from the 214th District Court
of Nueces County, Texas.

---

# MEMORANDUM OPINION

Before Chief Justice Valdez and Justices Rodriguez and Longoria
Memorandum Opinion by Chief Justice Valdez

Appellee, Minerva Lopez, individually and as wrongful death beneficiary of Humberto Lopez, deceased, on behalf of the estate of Humberto Lopez, deceased, and on behalf of all wrongful death beneficiaries of Humberto Lopez, deceased, filed a health care liability cause of action against appellant, Trisun Healthcare, LLC and Trisun Care Center River Ridge ("Trisun"). Trisun appeals the trial court's denial of its motion to dismiss appellee's health care liability claim. By two issues, Trisun contends that appellee's expert report does not comply with the requirements of section 74.351(r)(6) and that the expert, Michael P. Zeitlin, M.D., CMD, is not qualified to opine regarding causation. We affirm.[1]

## I.    STANDARD OF REVIEW AND APPLICABLE LAW

We review the trial court's decision on a motion to dismiss a health care liability claim under an abuse of discretion standard. *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 877–78 (Tex. 2001). "An abuse of discretion occurs when a trial court acts in an arbitrary or unreasonable manner or without reference to any guiding principles." *Moore v. Sutherland*, 107 S.W.3d 786, 789 (Tex. App.—Texarkana 2003, pet. denied) (citing *Garcia v. Martinez*, 988 S.W.2d 219, 222 (Tex. 1999)). We may not reverse for abuse of discretion simply because we would have decided the matter differently. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex. 1985).

We may not substitute our judgment for that of the trial court concerning the resolution of factual issues or matters committed to the trial court's discretion. *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992). The appellant must "establish that the trial

---

[1] As this is a memorandum opinion and the parties are familiar with the facts, we will not recite the facts in this opinion except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* TEX. R. APP. P. 47.4.

court could reasonably have reached only one decision." *Id.* at 840. A trial court has no discretion in determining what the law is or in applying the law to the facts and "a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion." *Id.*

Section 74.351 requires a plaintiff to serve on each defendant physician or health care provider whose conduct is implicated by a healthcare liability claim a curriculum vitae of each expert listed in the report and one or more expert reports setting forth the standard of care, breach of the standard of care, and causation. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a), (r)(6) (West, Westlaw through 2013 3d C.S.). An "expert report" is

> a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed.

*Id.* § 74.351(r)(6).

A court must grant a motion to dismiss under section 74.351(b) if, after the 120-day deadline has passed, it appears to the court that the report does not represent an objective, good-faith effort to comply with the definition of an expert report. *Id.* § 74.351(l). A "good-faith effort" means that the report "provide[s] enough information to . . . inform the defendant of the specific conduct the plaintiff has called into question . . . [and] a basis for the trial court to conclude that the claims have merit." *Palacios*, 46 S.W.3d at 879. A report cannot constitute a good-faith effort if it omits any of the statutory requirements. *Id.*

The trial court should look no further than the report itself, because all the information relevant to the inquiry is contained within the document's four corners. *Id.* at

3

878. The report does not need to marshal all of the plaintiff's proof, but it must include the expert's opinion regarding the three elements identified in section 74.351(r)(6), which include the standard of care, breach, and the causal relationship. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002) (citing *Palacios*, 46 S.W.3d at 878).

## II. ADEQUACY OF DR. ZEITLIN'S REPORT

By its first issue, Trisun contends that Dr. Zeitlin's report is not a good-faith effort to comply with section 74.351. Appellee responds that Dr. Zeitlin's report adequately addresses at least one theory; thus, the trial court properly denied Trisun's motion to dismiss. *See Certified EMS, Inc. v. Potts*, 392 S.W.3d 625, 630 (Tex. 2013) ("If a health care liability claim contains at least one viable liability theory, as evidenced by an expert report meeting the statutory requirements, the claim cannot be frivolous. . . . In sum, an expert report that adequately addresses at least one pleaded liability theory satisfies the statutory requirements, and the trial court must not dismiss in such a case.").

First, Dr. Zeitlin stated in his report that Trisun owed the following standards of care to the deceased: (1) "to immediately notify [the deceased's] physician when his left hand wound deteriorated and obtain additional treatment orders for hyperbaric wound treatment and consultation with a wound care specialist or plastic surgeon"; (2) "to monitor and treat the pressure ulcer documented on [the deceased's] scrotum at admission"; (3) "to institute standard and recognized precautionary measures for [the deceased] to prevent the development of pressure sores"; and (4) "to contact a surgeon or other physician when they knew that [the deceased's] left hand ulcerations had deteriorated and they had been ordered by Dr. Ramirez to obtain a consultation with a surgeon." Dr. Zeitlin opined that Trisun breached these standards of care by failing to: (1) "immediately

4

notify [the deceased's] physician when his left hand wound deteriorated"; (2) "obtain additional treatment orders for hyperbaric wound treatment and consultation with a wound care specialist or plastic surgeon when [the deceased's] left hand wounds deteriorated"; (3) "monitor and treat the pressure ulcer documented on [the deceased's] scrotum at admission"; (4) "institute standard and recognized precautionary measures for [the deceased] to prevent the development of pressure sores"; (5) place the deceased on "an air mattress with padding to areas of boney prominence"; (6) reposition the deceased every two hours "to relieve pressure on areas of boney prominence"; and (7) comply with Dr. Ramirez's order to consult with a surgeon concerning the deterioration of the wound on the deceased's hand.

In her pleading, appellee alleged, among other things, that Trisun had failed to properly care for the wound on the deceased's hand, thus causing him injury requiring amputation. Dr. Zeitlin opined that the standard of care required Trisun "to immediately notify [the deceased's] physician when his left hand wound deteriorated and obtain additional treatment orders for hyperbaric wound treatment and consultation with a wound care specialist or plastic surgeon" and "to contact a surgeon or other physician when they knew that [the deceased's] left hand ulcerations had deteriorated and they had been ordered by Dr. Ramirez to obtain a consultation with a surgeon." Although not set out under the heading "Standards of Care," Dr. Zeitlin also stated that the standard of care required Trisun to "obtain additional treatment orders for hyperbaric wound treatment and consultation with a wound care specialist or plastic surgeon when [the deceased's] left hand wounds deteriorated" and to "recognize and treat" the deceased's wound on his hand. According to Dr. Zeitlin, Trisun's failure to immediately notify the deceased's

5

physician of the deterioration of the wound on his hand and failure to recognize and treat the deteriorating wound on the deceased's hand caused the infection to progress and worsen. Dr. Zeitlin said that the wound had been described as deteriorating on June 25, 2010 and that if Trisun had contacted the deceased's physician and recognized and treated the wound properly when it began to deteriorate, the wound would not have progressed and worsened leading to the hand becoming gangrenous and mummified. Dr. Zeitlin stated that on

> June 26, 2010, Dr. Ramirez ordered a surgical consultation for [the deceased] due to his deteriorating left hand wound. Despite this order, no surgeon or other physician was contacted until June 28, 2010. During this two day time period, [the deceased's] left hand wound worsened as evidenced by the descriptions of the wound as progressing from dark red to maroon to black. In reasonable medical probability, if the wound had been immediately treated on June 25, 2010 or June 26, 2010 when it was alternately described as dark red and maroon, by a surgeon, it would have been debrided before it became gangrenous and would have been susceptible to treatment with hyperbaric oxygen. This would have in medical probability prevented [the deceased's] hand from becoming mummified and requiring amputation.

We understand Dr. Zeitlin's opinion as explaining the following: (1) the standard of care required that when Trisun documented that the deceased's wound on his hand was deteriorating, Trisun should have contacted the deceased's physician and a surgeon and Trisun also should have "immediately treated" the wound on either June 25 or June 26, 2010; (2) if Trisun had complied with these standards, the deceased's wound would have been debrided before it became gangrenous and would have been susceptible to hyperbaric oxygen treatment; and (3) if Trisun had not breached the standards of care, the deceased's hand wound would not have become mummified and, eventually amputated. We conclude that Dr. Zeitlin's report provided a fair summary of his opinions regarding the standards of care that Trisun was required to follow in treating the

6

deceased's wound on his hand, the manner in which the care rendered by Trisun failed to meet those standards, and the causal relationship between that failure and the injury, harm, or damages claimed by appellee. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6). The report provides enough information to inform Trisun of the specific conduct regarding the deceased's hand wound that appellee has called into question. *See Certified EMS, Inc.*, 392 S.W.3d at 630 (explaining that if the expert report adequately addresses at least one pleaded liability theory and satisfies the statutory requirements regarding that theory, "the trial court must not dismiss in such a case"); *Palacios*, 46 S.W.3d at 879. Thus, Dr. Zeitlin's report represents a good-faith effort to comply with section 74.351(r)(6). *See* TEX. R. CIV. P. 74.351(r)(6). The trial court did not abuse its discretion when it denied Trisun's motion to dismiss appellee's claim.[2] We overrule Trisun's first issue.[3]

### III.    DR. ZEITLIN'S QUALIFICATIONS

By its second issue, Trisun contends that Dr. Zeitlin is not qualified to opine regarding causation. Specifically, Trisun argues that Dr. Zeitlin failed to establish that "he

---

[2] Dr. Zeitlin also alleged that Trisun breached the standards of care by failing to prevent the formation of pressure ulcers on the deceased's buttocks. According to Dr. Zeitlin, Trisun was required to institute standard and recognized precautionary measures to prevent the development of pressure sores, to place the deceased on an air mattress, and to reposition the deceased every two hours in order to avoid the development of the pressure ulcers. Dr. Zeitlin opined that due to Trisun's failure to comply with the above-stated standards of care, the pressure sores on the deceased's buttocks developed and became infected with "Fournier's gangrene." Thus, the report is also adequate as to this theory.

[3] It is possible that Dr. Zeitlin's opinion is incorrect. However, at this stage of the proceeding, that possibility does not render his report insufficient and appellant's claims dismissible. *See Fagadau v. Wenkstern*, 311 S.W.3d 132, 139 (Tex. App.—Dallas 2010, no pet.) ("The possibility that facts may later be discovered that prove Dr. Goldman's opinions on causation are incorrect is not a basis for holding the report insufficient under section 74.351."); *Methodist Hosp. v. Shepherd–Sherman*, 296 S.W.3d 193, 200 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (noting that although discovery could later prove that a doctor's opinion is wrong, that is not a basis for holding report insufficient under chapter 74).

has actual personal knowledge, skill, experience, training or education in the treatment of nonhealing ischemic hand wounds and Fournier's gangrene."

Not every licensed physician is always qualified to testify on every medical question. *Broders v. Heise*, 924 S.W.2d 148, 152 (Tex. 1996). Therefore, the focus should not be on whether the expert is a physician and instead should be on the medical expert's "knowledge, skill, experience, training, or education" concerning the specific issue before the court which would qualify the expert to give an opinion on that particular subject. *Id.* at 153–54 (applying Texas Rule of Evidence 702).

Here, Dr. Zeitlin's report sets out that he is "a medical doctor currently licensed in California, Ohio, and Texas," that he is board certified by the American Board of Family Practice and that he has "the certificate of added qualifications in Geriatric Medicine." Dr. Zeitlin stated that he is also board certified as a long-term care medical director by the American Medical Directors Association and that he practices in the area of geriatric medicine. Dr. Zeitlin has also served as the medical director of several long-term care facilities and has published peer reviewed articles in the areas of geriatric medicine. Dr. Zeitlin, as of the date of the expert report, served as the regional medical director of the "Health & Medical Practice Associates," as medical director of the "Talecris Plasma Services, Guimbarda Family Medicine, Texas Medical Transfer," and had staff appointments at "Golden Manor Nursing Home, Promise Long Term Acute Care Hospital" and "Victor Hospital," among others. Dr. Zeitlin was "in private practice with Alamo Area Family & Geriatric Medicine Associates in San Antonio, Texas."

Dr. Zeitlin stated that, "during the time of this claim," he has "as part of [his] practice," been and is "currently, involved in the diagnosis, care, and treatment of many

8

elderly patients similar to [the deceased]," and he is "familiar with the diagnosis, care[,] and treatment of elderly patients with diabetes, renal disease, hypertension[,] and ulcerations at risk for the development of pressure sores and infections."  Dr. Zeitlin said that he "treat[s] patients in nursing homes and supervises the nurses and staff in the care that they provide my patients."  Dr. Zeitlin explained his expertise, in pertinent part, as follows:

>      At the time of the medical treatment of [the deceased], throughout 2010, I was treating elderly patients with symptoms similar to those experienced by [the deceased].  I am familiar with the accepted medical standards of care applicable to the assessment, diagnosis, and treatment of patients with hypertension, diabetes, end stage renal disease, hypertension, and open ulcerations that require assistance with ambulation and other activities of daily living.  I am also familiar with the preventative measures, diagnosis[,] and treatment to be provided to an elderly [patient] to prevent pressure sores, infection[,] and times diagnosis and treat infections should they occur. . . .  I know the accepted standards of care, the breaches[,] and violations of the standards of care, and the causal link between the breaches and violations of the standards of care and the injuries and death [of the deceased] as they apply to [Trisun] and its nurses and staff on the basis of my education, knowledge, training, and experience. I acquired this education, knowledge, training[,] and experience through[, among other things]:
>
> 1)      attending and successfully completing, medical school classes, and residency, that teach the evaluation, diagnosis, care[,] and treatment with elderly patients with the same or similar conditions as [the deceased] including hypertension, diabetes, end stage renal disease, hypertension, and open ulcerations who require assistance with ambulation and other activities of daily living;
>
> 2)      practical experience of diagnosing and treating elderly patients with the same or similar conditions as [the deceased] including hypertension, diabetes, end stage renal disease, hypertension, and open ulcerations who are at risk for developing infections and require assistance with ambulation and other activities of daily living;
>
> . . . .
>
> 4)      study of technical works routinely published in textbooks, journals, and literature concerning the evaluation, diagnosis, care[,] and

9

treatment of elderly patients with the same or similar conditions as [the deceased] including hypertension, diabetes, end stage renal disease, hypertension, and open ulcerations who are at risk for developing infections and require assistance with ambulation and other activities of daily living;

Dr. Zeitlin also stated that he has acquired his education, knowledge, training, and experience of treating elderly patients such as the deceased with ulcerations and the other above listed conditions through, among other things, the following: (1) his discussions with colleagues; (2) his consultations with other physicians who also treat such patients; (3) his experience as the medical director of nursing homes and long-term care facilities; and (4) his routine and regular contact with and supervision of nurses and staff who care for such patients. Dr. Zeitlin opined,

Based on my education, training, knowledge, and direct experience, I am familiar with the accepted, and expected, standards of care, as listed below, for nurses and staff who work in a hospital or health care facility and take care of elderly patients with these conditions, the breaches of the standards of care and the causation of the injuries from these breaches.

In summary, Dr. Zeitlin is licensed to practice medicine in California, Ohio, and Texas. He is board certified by the American Board of Family Practice and in geriatrics. Dr. Zeitlin is actively engaged in the practice of these specialties. He regularly engages in the diagnosis and treatment of patients who have similar or identical conditions suffered by the deceased, including the diagnosis and treatment of ulcerations and the infections that could result from improper treatment. Finally, Dr. Zeitlin stated that he has diagnosed and treated patients in nursing homes with the same conditions as the deceased with ulcerations and has experience in the prevention of ulcerations and infections to those ulcers.

10

Trisun argues that Dr. Zeitlin was not qualified to opine on the cause of the infection of the deceased's wound on his hand. We disagree and conclude that Dr. Zeitlin has the knowledge, skill, experience, training, and education to opine on the issue before the trial court of whether Trisun's alleged breach in not providing appropriate treatment to the deceased's wound on his hand caused the infection and eventual amputation of that hand. Trisun also complains that Dr. Zeitlin never specifically said that he has experience treating "Fournier's gangrene." However, Dr. Zeitlin did explain that he has experience preventing and treating ulcerations in patients, such as the deceased, including the treatment and prevention of infection of the ulcerations and that "Fournier's gangrene" is an infection that occurs in pressure ulcers. Thus, we conclude that Dr. Zeitlin has the knowledge, skill, experience, and training to opine on the link between Trisun's alleged breach of the standards of care in treating and preventing pressure ulcers to develop and the infection that followed due to Trisun's alleged breach. *See Broders*, 924 S.W.2d at 153–54. Therefore, the trial court did not abuse its discretion by determining that Dr. Zeitlin was qualified to opine regarding causation in this case. *See Palacios*, 46 S.W.3d at 877–78. We overrule Trisun's second issue.

## IV. CONCLUSION

We affirm the trial court's denial of Trisun's motion to dismiss.

**/s/ Rogelio Valdez**
ROGELIO VALDEZ
Chief Justice

Delivered and filed the
3rd day of July, 2014.

11