

# NUMBER 13-17-00302-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

JORGE C. ZAMORA-QUEZADA,
M.D.,                                                                              Appellant,

v.

AMALIA MENDOZA,                                                          Appellee.

## On appeal from the 93rd District Court
## of Hidalgo County, Texas.

# MEMORANDUM OPINION

### Before Justices Rodriguez, Contreras, and Hinojosa
### Memorandum Opinion by Justice Contreras

We issued our original memorandum opinion in this case on March 1, 2018.

Appellant, Jorge C. Zamora-Quesada, M.D., has filed a motion for rehearing. *See* TEX.

R. APP. P. 49.1. We deny the motion for rehearing but withdraw our prior memorandum

opinion and judgment and substitute the following memorandum opinion and accompanying judgment in their place.

In this interlocutory appeal, appellant Jorge C. Zamora-Quezada, M.D., challenges the denial of his motion to dismiss the health care liability claim of appellee Amalia Mendoza. *See* TEX. CIV. PRAC. & REM. CODE. ANN. §§ 51.014(a)(9); 74.351(a), (b) (West, Westlaw through 2017 1st C.S.). By two issues containing multiple sub-issues, Dr. Zamora-Quezada argues that the trial court abused its discretion in not dismissing the health care liability claim because: (1) the first expert's report was deficient, and (2) the second expert's report was deficient. We affirm.

## I. BACKGROUND

Mendoza filed suit against Dr. Zamora-Quezada alleging medical negligence for prescribing methotrexate (MTX) to her from July of 2013 until June of 2014. Dr. Zamora-Quezada, a rheumatologist, treated Mendoza for rheumatoid arthritis. Mendoza alleged that Dr. Zamora-Quezada prescribed her MTX despite knowing that she had been diagnosed with chronic renal failure and was undergoing kidney dialysis.

According to Mendoza's expert reports, the MTX prescription resulted in Mendoza making multiple trips to the Emergency Department of the Valley Baptist Harlingen Hospital, until she was diagnosed with MTX toxicity on June 30, 2014. The reports explain that as a result of Dr. Zamora-Quezada prescribing Mendoza MTX—a medication which is removed from the body at a slower rate in patients with impaired renal function— Mendoza suffered from ulcers in her esophagus and mouth and a "life-threatening low blood count of white cells." Mendoza's petition states that as a result she suffered "mental depression, pain, and anguish."

2

Mendoza filed suit on August 8, 2016. Pursuant to the medical liability statute, Mendoza filed an expert report authored by James M. Wheeler, M.D. *See id.* § 74.351(a). On December 29, 2016, Dr. Zamora-Quezada filed objections to the qualifications of Dr. Wheeler and a motion to dismiss. At a hearing on February 6, 2017, while stressing that Dr. Wheeler's report was sufficient, Mendoza requested a thirty day extension "to be on the safe side" and file a second report. The trial court granted Mendoza the extension without ruling on the motion to dismiss or finding Dr. Wheeler's report deficient, and Mendoza then filed a second expert report authored by Lige B. Rushing Jr., M.D. Dr. Zamora-Quezada again filed objections, which were overruled, and a second motion to dismiss, which was denied.[1] This interlocutory appeal followed.

## II. STANDARD OF REVIEW

We review a trial court's decision on the sufficiency of an expert's report and on a motion to dismiss under the expert-report rule for an abuse of discretion. *Jelinek v. Casas*, 328 S.W.3d 526, 539 (Tex. 2010). A court abuses its discretion if it acts in an arbitrary or unreasonable manner and without reference to any guiding rules or principles. *Crawford v. XTO Energy, Inc.*, 509 S.W.3d 906, 911 (Tex. 2017). "When reviewing matters committed to the trial court's discretion, 'the reviewing court may not substitute its judgment for that of the trial court.'" *Miller v. JSC Lake Highlands Operations, LP*, __ S.W.3d __ , __ , 2017 WL 6391215, at *2 (Tex. Dec. 15, 2017) (quoting *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992)).

---

[1] Dr. Zamora-Quezada's first motion to dismiss concerned only Dr. Wheeler's report, while his second motion to dismiss primarily concerned Dr. Rushing's report. The record contains no written ruling on the first motion to dismiss. However, both reports were considered at the hearing on the second motion to dismiss. Accordingly, we will also consider both reports in determining whether the Chapter 74 expert report requirements were met.

3

### III.   APPLICABLE LAW

Section 74.351 of the Texas Civil Practice and Remedies Code provides that a plaintiff in a health care liability suit must serve the defendant with a statutorily-compliant expert report accompanied by the expert's curriculum vitae (CV).  *See* TEX. CIV. PRAC. & REM. CODE. ANN. § 74.351.  If a plaintiff fails to do so within 120 days of filing suit, the statute provides that the trial court must dismiss the claim with prejudice on the defendant's motion.  *See id.* § 74.351(a), (b)(2).

"A trial court must sustain a challenge to a report's adequacy if the report does not represent an objective good faith effort to provide a fair summary of the applicable standard of care, the defendant's breach of that standard, and how that breach caused the patient's harm."  *Miller*, __ S.W.3d at __ , 2017 WL 6391215, at *2 (internal quotations omitted); *see* TEX. CIV. PRAC. & REM. CODE. ANN. § 74.351(*l*), (r)(6).  "A good-faith effort must 'provide enough information to fulfill two purposes:  (1) it must inform the defendant of the specific conduct the plaintiff has called into question, and (2) it must provide a basis for the trial court to conclude that the claims have merit.'"  *Miller*, __ S.W.3d at __ , 2017 WL 6391215, at *2 (quoting *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002) (per curiam)).  Also, a trial court may read several reports in concert to determine whether a plaintiff has made a good-faith effort to comply with the expert-report requirements.  *Id.*; *see* TEX. CIV. PRAC. & REM. CODE. ANN. § 74.351(i).

All information needed for this inquiry is found within the four corners of the expert report, which need not marshal all of the plaintiff's proof.  *Jelinek*, 328 S.W.3d at 539 (quoting *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 879, 879 (Tex. 2011)).  However, the report cannot merely state the expert's conclusions about the

4

elements, but instead must explain the basis of the expert's statements and link his conclusions to the facts. *Id.*; *see Samlowski v. Wooten*, 332 S.W.3d 404, 409–10 (Tex. 2011) (plurality op.). In this inquiry, we are precluded from filling gaps in a report by drawing inferences or guessing as to what the expert likely meant or intended. *Fulp v. Miller*, 286 S.W.3d 501, 509 (Tex. App.—Corpus Christi 2009, no pet.).

## IV. DR. WHEELER'S EXPERT REPORT

By his first issue, which presents five sub-issues, Dr. Zamora-Quezada argues that Dr. Wheeler's expert report was deficient because: (1) he did not have the qualifications to opine; (2) he did not satisfy the requirements to opine as to the standard of care; (3) he did not set forth a breach of the standard of care; (4) he did not set forth proximate cause; and (5) his report was "no report" because he failed to implicate appellant, and he was unqualified.

### A. Qualifications to Opine

To qualify as an expert on whether a physician departed from accepted standards of medical care, a person must be a physician who: (1) is practicing medicine at the time such testimony is given or was practicing medicine at the time the claim arose; (2) has knowledge of accepted standards of medical care for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claims; and (3) is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of medical care. TEX. CIV. PRAC. & REM. CODE. ANN. § 74.401(a) (West, Westlaw through 2017 1st C.S.).

A physician who does not specialize in the same area of medicine as the defendant is competent to testify if he has practical knowledge of what is usually and customarily

5

done by a practitioner under circumstances similar to those confronting the defendant. *See Roberts v. Williamson*, 111 S.W.3d 113, 122 (Tex. 2003); *Gelman v. Cuellar*, 268 S.W.3d 123, 128 (Tex. App.—Corpus Christi 2008, pet. denied). Nevertheless, not every licensed doctor is automatically qualified to testify on every medical question. *Broders v. Heise*, 924 S.W.2d 148, 152 (Tex. 1996). Thus, the trial court's inquiry should not focus on the specialty of the medical expert. *Tenet Hosps. Ltd. v. Love*, 347 S.W.3d 743, 749–50 (Tex. App.—El Paso 2011, no pet.). Instead, the trial court should look to "whether the offering party has established that the expert has knowledge, skill, experience, training or education regarding the specific issue before the court." *Gelman*, 268 S.W.3d at 128 (citing Tex. R. Evid. 702; *Roberts*, 111 S.W.3d at 121). "Therefore, a medical expert from one specialty may be qualified to testify if he has practical knowledge of what is customarily done by practitioners of a different specialty under circumstances similar to those at issue in the case." *Love*, 347 S.W.3d at 750 (citing *Keo v. Vu*, 76 S.W.3d 725, 732 (Tex. App.—Houston [1st Dist.] 2002, pet. denied)); *see Gelman*, 268 S.W.3d at 128.

Dr. Zamora-Quezada argues that the issue is whether a rheumatologist has violated a medical standard of care that is specifically applicable only to rheumatologists, and therefore Dr. Wheeler, a practicing reproductive endocrinologist and obstetrician-gynecologist (Ob/Gyn), is disqualified. We disagree. The issue is whether a medical doctor would prescribe MTX to an individual with renal failure and on kidney dialysis. Further, as noted, the fact that Dr. Zamora-Quezada is a rheumatologist does not require that Mendoza's expert be a rheumatologist as well. *See Roberts*, 111 S.W.3d at 122.

Here, Dr. Wheeler's expert report notes that he: is a medical doctor licensed to practice in Texas since 1981; practiced medicine at the time of the injury and at the time

6

he made the report; is board-certified in obstetrics and gynecology; has operated a private practice since 2006 as a reproductive endocrinologist and Ob/Gyn; took courses in urology during medical school and residency training; cared for hundreds of patients with renal insufficiency and dozens of patients requiring hemodialysis and peritoneal dialysis during medical school; treated "renal insufficiency/failure" as an emergency room physician for several small Texas hospitals; has worked full-time as a primary care provider to women as an Ob/Gyn, including diagnosing and treating issues involving the urinary system, from 1994 to the present; and has clinical experience from 2013–2014—the time when the alleged prescription and injury occurred—treating women with MTX and women who have "renal insufficiency/failure/transplant." Dr. Wheeler's expert report is accompanied by a thirty-page CV, showcasing accomplishments in medicine and medical practice for over thirty years, and supporting the expertise claimed in his report.

The record reflects that Dr. Wheeler was practicing medicine at the time the claim arose; has knowledge of the standards of care for the diagnosis, care, and treatment of MTX toxicity; and displays qualification on the basis of his medical training and experience during his career as a licensed physician. *See* TEX. CIV. PRAC. & REM. CODE. ANN. § 74.401(a). Further, the record reflects that Dr. Wheeler has knowledge, skill, experience, training, and education regarding the standard of care when prescribing MTX to a patient with renal failure and on dialysis. *See Gelman*, 268 S.W.3d at 128. Thus, the trial court did not abuse its discretion by concluding that Dr. Wheeler was qualified to opine. *See Roberts*, 111 S.W.3d at 122.

Finally, appellant also argues that Dr. Wheeler is specifically unqualified to opine as to standard of care and causation; however, given the preceding discussion, the trial

7

court could and did conclude that Dr. Wheeler was qualified to opine on those matters. *See* TEX. CIV. PRAC. & REM. CODE. ANN. § 74.401(a) (qualifications for expert witness on standard of care), .403(a) (West, Westlaw through 2017 1st C.S.) (qualifications for expert witness on the issue of causation); *see also* TEX. R. EVID. 702; *Roberts*, 111 S.W.3d at 122.

We overrule appellant's first sub-issue as to Dr. Wheeler's report.

## B. The Standard of Care

By his second sub-issue, Dr. Zamora-Quezada argues that "[b]ecause Dr. Wheeler is not qualified to opine on the standard of care for a rheumatologist, any opinions he expresses on standard of care are speculative and without foundation. As such, [Mendoza's] initial . . . filing did not meet the requirements of" the medical liability statute. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6). However, as previously noted, the trial court did not abuse its discretion in finding that Dr. Wheeler was qualified to opine as an expert on the standard of care.

Furthermore, we note the following from Dr. Wheeler's report setting forth the applicable standard of care:

> The following standards of care were applicable to Dr. Zamora, as well as to all physicians who prescribe MTX, in his care of Ms. Mendoza in 2013 – 2014:
>
> 1) At every visit, major medical conditions such as chronic renal failure requiring hemodialysis should be recorded.
>
> 2) MTX should not be given to a patient with chronic renal failure on hemodialysis.
>
> 3) If MTX is prescribed without recognizing the presence of chronic renal failure/hemodialysis, once this serious condition is identified, MTX should be immediately discontinued.

8

4) If MTX somehow continues to be prescribed, and signs/symptoms of classic drug toxicity presents, e.g. mouth ulcers on MTX therapy in a woman at high risk for toxicity, the drug causing the toxicity should be immediately discontinued.

*See Palacios*, 46 S.W.3d at 880. Thus, Mendoza's initial filing did have an opinion on the standard of care that satisfied the requirement of the medical liability statute. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6).

We overrule Dr. Zamora-Quezada's second sub-issue as to Dr. Wheeler's report.

## C. Breach of the Standard of Care

By his third sub-issue, Dr. Zamora-Quezada argues that Dr. Wheeler's report does not inform him with sufficient specificity of the conduct Mendoza calls into question as a breach of the standard of care. *Palacios*, 46 S.W.3d at 875; *see* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6).

We note the following from Dr. Wheeler's expert report:

These [medical records of Mendoza] clearly demonstrate Dr. Zamora departed from his standards of care by:

1) Failing to always record, and notice, a diagnosis as major as chronic renal failure on each and every patient visit of Ms. Mendoza.

2) Prescribing MTX to Ms. Mendoza, who has chronic renal failure and is on hemodialysis.

3) Once recognizing a risk factor such as chronic renal failure, failing to immediately stop the contraindicated MTX.

4) When presented with a classic sign/symptom of MTX toxicity, failing to recognize it as such and discontinue the drug immediately.

For Dr. Zamora to prescribe MTX to a patient like Ms. Mendoza, a diabetic/hypertensive/variably compliant woman with renal failure on hemodialysis, is an egregious breach of the standard of care, comprising

9

reckless disregard for the consequences of one's care of a very ill, and vulnerable, patient.

In this case, Dr. Wheeler clearly identified the standard of care applicable, stated they applied to Dr. Zamora-Quezada in this situation, and how he breached them. Therefore, the trial court, in its discretion, could have concluded that Dr. Wheeler's report contained an adequate opinion regarding Dr. Zamora-Quezada's breach of the applicable standard of care. *See Jelinek*, 328 S.W.3d at 539–40.

Appellant also argues that Dr. Wheeler's conclusions as to the breach of the standard of care are baseless because "the records [attached to Dr. Zamora-Quezada's motion to dismiss] actually clearly demonstrate appellant was not involved in [Mendoza's] care and treatment." Specifically, appellant argues that physician assistant Lillian Williams was the one who saw Mendoza and prescribed MTX and that Williams was employed by a different entity. As support, appellant points to his affidavit testimony and medical records that he attached to his objections to Dr. Wheeler's report and motion to dismiss. Appellant goes on to argue:

> In evaluating the trustworthiness of statutory reports, appellate courts have applied a practical approach that disallows outside evidence to bolster a report, but permits extrinsic evidence to prevent plaintiffs from going forward with lawsuits based on false or incorrect information contained in these reports. *See, e.g., Baptist Hospitals of Southeast Texas v. Carter*, No. 09-08-067 CV, 2008 WL 2917109 at *6-8, 10, 14, n. 4 (Tex. App.—Beaumont July 31, 2008, no pet.) (mem. op.) (Court is authorized to consider extrinsic evidence outside of the four corners of the expert's report to determine the validity of the statements reflected therein); *Packard v. Guerra*, 252 S.W.3d 511, 533 (Tex. App.—Houston [14th Dist.] 2008, pet. denied); *Lovato v. Austin Nursing Ctr., Inc.*, No. 03-02-00305-CV, 2003 WL 1561203 at *3 (Tex. App.—Austin Mar. 27, 2003, no pet.) (mem. op.).

This passage fails to disclaim that a trial court's consideration of extrinsic evidence outside the four corners of the expert's report to undermine it has been rejected by four

of our sister courts, including the court that issued *Carter*. *See Gonzalez v. Padilla*, 485 S.W.3d 236, 246 (Tex. App.—El Paso 2016, no pet.) (concluding that the rule in *Carter* regarding consideration of "parole evidence" is inconsistent with the Eighth Court of Appeals' previous approach to scope of review at the expert report stage of litigation); *Gannon v. Wyche*, 321 S.W.3d 881, 891 n.5 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (disagreeing with the reasoning in *Carter* because it is contrary to the supreme court's instruction that the inquiry regarding the adequacy of an expert report is limited to the four corners of the report); *Mettauer v. Noble*, 326 S.W.3d 685, 691 (Tex. App.— Houston [1st Dist.] 2010, no pet.) (agreeing with appellee that any review of the source material, which is outside the four corners of a chapter 74 report, violates the "four corners" rule of *Palacios*); *see also Christus Health Se. Tex. v. Broussard*, 306 S.W.3d 934, 937–38 (Tex. App.—Beaumont 2010, no pet.) ("Because defendants' motion asked the trial court to look beyond the four corners of the report and determine fact issues based on an affidavit and documents not reviewed or relied on by the expert, the trial court did not abuse its discretion in denying the motion to dismiss.").[2] Joining our sister courts, we find no abuse of discretion in the trial court's refusal to consider appellant's affidavit testimony and the accompanying medical records in order to undermine

---

[2] Appellant's reliance on *Packard v. Guerra*, 252 S.W.3d 511, 533 (Tex. App.—Houston [14th Dist.] 2008, pet. denied), and *Lovato v. Austin Nursing Ctr., Inc.*, No. 03-02-00305-CV, 2003 WL 1561203, at *3 (Tex. App.—Austin Mar. 27, 2003, no pet.) (mem. op.), belies rather than supports appellant's contention. In *Packard*, the appellate court held that a corporate attorney's report "connecting the dots" between each entity (and individual) and its (or their) responsibility for training programs or management of emergency rooms did not violate the proscription against going outside the four corners of an expert report to rely on extrinsic data. 252 S.W.3d at 530–33. In *Lovato*, the court wrote that "to determine whether a report meets the statutory requirements and whether the claims have merit, a trial court need not look at the expert report in isolation. Instead, the trial court must necessarily be permitted to examine a plaintiff's pleadings." 2003 WL 1561203 at *3.

11

Dr. Wheeler's report. *See Gonzalez v. Padilla*, 485 S.W.3d at 246; *Mettauer*, 326 S.W.3d at 691; *Gannon*, 321 S.W.3d at 891 n. 5; *Broussard*, 306 S.W.3d at 397–98.

We also note that, an expert report is not intended to marshal all of the plaintiff's proof. *Jelinek*, 328 S.W.3d at 539; *Palacios*, 46 S.W.3d at 879 ("The report can be informal in that the information in the report does not have to meet the same requirements as the evidence offered in a summary-judgment proceeding or at trial."). Further, this argument is improper under a motion to dismiss based on the expert-report rule. *See* TEX. CIV. PRAC. & REM. CODE. ANN. § 74.351; *see also* TEX. R. CIV. P. 166a (rule governing summary judgment); *Fagadau v. Wenkstern*, 311 S.W.3d 132, 139 (Tex. App.—Dallas 2010, no pet.) (report can be good-faith effort even if expert's opinions could later be proved incorrect).

We overrule appellant's third sub-issue as to Dr. Wheeler's report.

### D. Proximate Cause

By his fourth sub-issue, appellant claims that Dr. Wheeler's report is deficient because it fails to properly set out proximate causation.

An expert report "cannot simply opine that the breach caused the injury" but rather must, "to a reasonable degree, [explain] how and why the breach caused the injury based on the facts presented." *Jelinek*, 328 S.W.3d at 539–40. If it fails to do so, it "does not give the trial court a reasonable basis for concluding that the lawsuit has merit." *Id.* at 539 (citing *Palacios*, 46 S.W.3d at 879).

We note the following passage from Dr. Wheeler's expert report:

The records reviewed hold absolute consensus as to what caused [Mendoza's] stomatitis and pancytopenia—MTX toxicity. The medical literature demonstrates absolute consensus that MTX is contraindicated in

12

chronic renal failure/hemodialysis patients, like Ms. Mendoza.[3] Proximate cause is profoundly clear in Ms. Mendoza's case, with no competing causes evident from this record review. . . . I am quite reasonably medically certain that Dr. Zamora's grossly negligent prescription of MTX directly and proximately cause[d] Ms. Mendoza's injuries.

This paragraph establishes a causal relationship between Dr. Quezada's negligence (i.e., prescribing MTX to a patient with renal failure) and the harm suffered (i.e., MTX toxicity resulting in stomatitis and pancytopenia). *See Tenet Hosps. Ltd. v. Barajas*, 451 S.W.3d 535, 547–48 (Tex. App.—El Paso 2014, no pet.) ("the expert report must explain the basis for the causation opinions by linking the expert's conclusions to the alleged breach"). In other words, this is more than a mere conclusory assertion. *See Jelinek*, 46 S.W.3d at 540; *Palacios*, 46 S.W.3d at 879.

We overrule appellant's fourth sub-issue as to Dr. Wheeler's report.

### E. "No Report"

By his fifth sub-issue, appellant argues that "Dr. Wheeler's report was 'no report' as to standard of care, breach[,] or causation; in addition, he was not qualified. Since

---

[3] In an earlier section of his expert report, Dr. Wheeler explains the relevant medical literature on how MTX interacts with the human body to cause the type of injuries in a patient like Mendoza:

> Renal impairment and age, like those of Ms. Mendoza, are considered major risk factors of developing MTX toxicity. Patients on hemodialysis for their chronic renal failure, like Ms. Mendoza, are at particular risk for MTX toxicity; the mechanism of this toxicity may be due, in part, to the increased free, active proportion of MTX that is found in hemodialysis patients. Chronic renal failure patients often have less circulating proteins in their serum, including reduced serum albumin, which is the main protein that binds many medications, including MTX. Multiple factors, including percent of unbound molecules, go into whether a medication's blood level is reduced during hemodialysis; MTX blood levels are less effected by dialysis than other medications. The pharmacology literature contains such clear admonitions that "MTX is an example of a drug that should no longer be prescribed" in the presence of kidney failure.

In exercising its discretion, it is incumbent upon the trial court to review the report, sort out its content, resolve any inconsistencies, and decide whether the report demonstrates a good faith effort to show that the plaintiff's claims have merit. *See Van Ness v. ETMC First Physicians*, 461 S.W.3d 140, 144 (Tex. 2015). If a trial court may reconcile inconsistencies within a report, it may also read complementary passages in different sections of a report together. *See id.*

[Mendoza's] report failed to meet the statutory requirements and did not implicate [Dr. Zamora-Quezada], the initial [expert] report was not merely deficient, it was 'no report.'"

A report must at a minimum (1) be timely served, (2) contain the opinion of a qualified expert, and (3) implicate the defendant's conduct. *Scoresby v. Santillan*, 346 S.W.3d 546, 557 (Tex. 2011). Dr. Zamora-Quezada concedes that Dr. Wheeler's report was timely served. And, as previously discussed, the trial court did not abuse its discretion by concluding that Dr. Wheeler was qualified; that he provided a standard of care, a breach of that standard, and causation of Mendoza's injuries; and that his report specifically implicated Dr. Zamora-Quezada's conduct as Mendoza's physician. Thus, Dr. Wheeler's report was a statutorily-compliant report. *See* TEX. CIV. PRAC. & REM. CODE. ANN. § 74.351.

Nevertheless, Dr. Zamora-Quezada argues that Dr. Wheeler's report is "no report" because the records and evidence attached to Dr. Zamora-Quezada's motion to dismiss clearly established that Williams was the one who saw Mendoza and prescribed MTX. However, as noted earlier, this is an inappropriate ground to dismiss under the expert-report rule. *See* TEX. CIV. PRAC. & REM. CODE. ANN. § 74.351(b); *Jelinek*, 328 S.W.3d at 539; *see also* TEX. R. CIV. P. 166a (rule governing summary judgment); *Palacios*, 46 S.W.3d at 879; *Fagadau*, 311 S.W.3d at 139.

Dr. Wheeler's report does not have to present all of Mendoza's proof, but it must discuss the standard of care, breach, and causation with sufficient specificity to (1) inform Dr. Zamora-Quezada of the conduct Mendoza has called into question and (2) provide a basis for the trial court to conclude that Mendoza's claims have merit. *See In re Buster*, 275 S.W.3d 475, 476–77 (Tex. 2008) (orig. proceeding) (per curiam); *Palacios*, 46

14

S.W.3d at 878–79. The trial court did not abuse its discretion in concluding Dr. Wheeler's report did that.

We overrule Dr. Zamora-Quezada's fifth sub-issue as to Dr. Wheeler's report.

### F. Summary

Having found that the trial court did not abuse its discretion in finding Dr. Wheeler qualified to opine and that his expert report duly set forth duty, breach, and causation, we conclude that the trial court did not abuse its discretion in denying Dr. Zamora-Quezada's motion to dismiss. *Miller*, __ S.W.3d at __ , 2017 WL 6391215, at *2; *see* TEX. CIV. PRAC. & REM. CODE. ANN. § 74.351(i).

We overrule appellant's first issue.

### V.  DR. RUSHING'S EXPERT REPORT

By his second issue, Dr. Zamora-Quezada argues that Dr. Rushing's expert report was deficient. However, we need not reach this issue in light of our conclusion that Dr. Wheeler's report was sufficient to satisfy the statute. *See* TEX. CIV. PRAC. & REM. CODE. ANN. § 74.351; TEX. R. APP. P. 47.1.

Nevertheless, we point out that Dr. Rushing's report further evidences Mendoza's fulfillment of her good-faith effort to comply with the statute. *See* TEX. CIV. PRAC. & REM. CODE. ANN. § 74.351(i), (*l*), (r)(6)*; Miller*, __ S.W.3d at __ , 2017 WL 6391215, at *2 (holding expert reports can be read in concert). Dr. Rushing's report discusses Mendoza's medical records, MTX toxicity, duty, breach, and causation, and it parallels Dr. Wheeler's opinions and conclusions. Finally, Dr. Rushing is a board certified rheumatologist and practiced as a rheumatologist at the time of the injury and at the time of her expert report.

15

## VI.    CONCLUSION

We affirm the trial court's judgment.

DORI CONTRERAS
Justice

Delivered and filed the
12th day of April, 2018.

16